USCA1 Opinion

 

 July 25, 1994 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-2344 RICHARD L. COLANTUONI AND CAROL L. COLANTUONI, Plaintiffs, Appellants, v. ALFRED CALCAGNI & SONS, INC., ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ernest C. Torres, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ William E. McKeon, Jr., with whom Kevin M. Cain was on brief for ______________________ _____________ appellants. Michael G. Sarli for appellee Alfred Calcagni & Son, Inc. ________________ John F. Kelleher for appellee R.D. Werner Co., Inc. ________________ Peter J. Comerford for appellee Frank N. Gustafson & Sons, Inc. __________________ ____________________ ____________________ COFFIN, Senior Circuit Judge. Plaintiffs Richard and Carol ____________________ Colantuoni brought this action against four defendants to recover for injuries sustained when Richard Colantuoni fell from a ladder at a construction site at Rhode Island College. The district court rejected plaintiffs' claims of liability and granted summary judgment for three of the defendants. After reviewing the record, we affirm. I. Factual Background __________________ On the morning of April 25, 1989, Richard Colantuoni, a sheet metal worker, was using the upper section of an extension ladder (the "fly section") to tie in a sheet metal duct to an overhead roof fan at his worksite when he fell from the ladder, sustaining serious injury. He brought this action, charging that his accident was caused by the negligence of Alfred Calcagni & Son, Inc., the general contractor at the job site; R.D. Werner, Inc., the alleged manufacturer of the ladder; Frank N. Gustafson & Sons, Inc., a subcontractor at the construction site; and Design Erectors, Inc., a subcontractor to Gustafson. He also claimed that Werner was liable for damages based on two additional theories of liability: strict liability for manufacture of a defective product; and breach of implied warranty. The district court granted summary judgment for Calcagni, Gustafson, and Werner, and entered a default judgment against Design Erectors. The court held that the doctrine of assumption of the risk barred recovery for plaintiffs' negligence and products liability claims. The court rejected plaintiffs' claim for breach of implied warranty, finding that there was no evidence that the ladder was not fit for its intended purpose, or failed to meet standards of implied fitness or merchantability, and that there was nothing to indicate that there was anything specifically wrong with the ladder. The court also found that, in waiting until the eve of the statute of limitations to serve the defendants, plaintiffs failed to comply with the notice requirement of R.I. Gen. Laws 6A-2-607 (requiring reasonable notice to seller in breach of warranty action). Finally, the court held that except for the ladder manufacturer, none of the defendants owed a duty to Colantuoni, and so these defendants could not be liable based on negligence. Plaintiffs appeal from this judgment. Our review of an order granting summary judgment is plenary. Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993). ______ _____ II. Negligence and Strict Liability Claims ______________________________________ Plaintiff advances several claims of error on appeal, arguing first that the district court erred in granting defendants' summary judgment motions based on assumption of the risk, because a general issue of fact existed as to whether plaintiff knowingly and voluntarily assumed the risk of his injury. We agree with the district court that the record unequivocally shows that plaintiff assumed the risk of injury. In Rhode Island, the doctrine of assumption of the risk operates as a complete bar to recovery for actions based on negligence and -3- strict liability. We therefore affirm the district court's grant of summary judgment for defendants on these claims. A. Assumption of the Risk in Rhode Island ______________________________________ In Rhode Island, the doctrine of assumption of the risk is an affirmative defense which operates to absolve a defendant of liability for creating a risk of harm to a plaintiff. Kennedy v. _______ Providence Hockey Club, Inc., 376 A.2d 329, 333 (1977). To ______________________________ establish this defense, a defendant must show that plaintiff knew of the existence of a danger, appreciated its unreasonable character, and then voluntarily exposed himself to it. Drew v. ____ Wall, 495 A.2d 229, 231 (R.I. 1985). The standard for ____ determining whether a plaintiff knew of and voluntarily encountered a risk is subjective, and is keyed to what the particular plaintiff in fact saw, knew, understood and appreciated. Kennedy, 376 A.2d at 332; Drew, 495 A.2d at 231-32. _______ ____ While the question of whether a plaintiff assumed the risk is usually a question for the trier of fact to decide, if the facts suggest only one reasonable inference, the issue becomes one of law, and may be decided by the trial court on summary judgment. Id. at 231; Rickey v. Boden, 421 A.2d 539, 543 (R.I. 1980). ___ ______ _____ Traditionally, assumption of the risk existed as a defense to negligence actions, operating to terminate the duty defendant owed to plaintiff. Kennedy, 376 A.2d at 332-333. In a diversity _______ case interpreting Rhode Island law, we held that assumption of the risk is a viable defense to products liability cases. Turcotte v. Ford Motor Co., 494 F.2d 173, 183 (1st Cir. 1974). ________ _______________ -4- The Rhode Island Supreme Court later endorsed this view. Mignone _______ v. Fieldcrest Mills, 556 A.2d 35, 41 (R.I. 1989) (citing _________________ Turcotte). ________ B. Application ___________ Viewing the record, as we must, in the light most favorable to plaintiffs, Pagano, 983 F.2d at 347, we nevertheless conclude ______ that the only reasonable inference to draw from the record before us is that plaintiff assumed the risk of his injury. Colantuoni was injured when he fell from a ladder while "tying in" a sheet metal duct to an overhead roof fan. This was a standard procedure that usually took no longer than seven to eight minutes to complete. Plaintiff had worked in the sheet metal trade for twenty-four years, and had used both step ladders and extension ladders as part of his work and at home. In his position as a sheet metal worker, plaintiff generally did duct work on heating, ventilation and air conditioning systems, including the overhead installation of these systems. At the time of his accident, Colantuoni was the job foreman for Shane Engineering. As foreman, he was responsible for making sure the job proceeded on schedule and was done correctly, and for ordering materials for the job. Among other things, he knew that he would need ladders, staging, or some other means of reaching the ceiling and above ceiling spaces to install the duct work at the job site. Shane Engineering had a hydraulic lift that could be used to access hard-to-reach areas, but the lift could not be used to reach the ceiling space because it would not -5- fit into the room where plaintiff was working. It was plaintiff's decision as foreman to figure out an alternative method of reaching the ceiling. On the date of the accident, plaintiff's coworker David Solari found the top half of an extension ladder for plaintiff to use while installing the duct work. Plaintiff knew that he was using the fly section of an extension ladder, and he knew that the standard safety instructions affixed to extension ladders included warnings not to take such ladders apart. There is no evidence in the record as to who separated the ladder. In his deposition, plaintiff acknowledged that he appreciated the risks inherent in using the ladder in an altered condition at the time of his fall. He noted, for example, that the ladder did not have rubber feet on the bottom, which posed an even greater danger of slipping than ladders with feet. Nonetheless, he felt comfortable using the ladder without tying it to a stationary object, or having a fellow worker put his weight on the bottom of the ladder to improve its stability, and despite the presence of other ladders at the job site. Plaintiff checked the ladder's stability by looking at it and testing it with his hands, and climbing up a few rungs and bouncing on it, to see if it would slip. Colantuoni suggests that the following facts support his claim that he did not assume the risk of his injury: he had never seen someone slip and fall while using the fly section of an extension ladder, he had not been warned by defendants of the -6- possibility of slipping, and he had never used the particular ladder at issue. He likens his case to that of the plaintiff in Handrigan v. Apex Warwick, Inc., 275 A.2d 262 (R.I. 1971), in _________ ___________________ which the Rhode Island Supreme Court upheld a jury verdict for a plaintiff who was injured when he fell from an extension ladder that had been set up by another individual. Like the plaintiff in Handrigan, plaintiff claims, he neither knew of the danger nor _________ proceeded deliberately to encounter it. We disagree. First, Handrigran is entirely inapposite to __________ this case, having been an action for breach of implied warranty. The challenges were to instructions as to the fitness for intended use of a ladder, abnormal use, and inclusion of plaintiff within the intended class of beneficiaries of the relevant statute. Assumption of the risk was not an issue. Moreover, nothing in Handrigan suggests that plaintiff, helping a _________ friend paint his house, had any familiarity or prior experience with extension ladders, or with the risks attendant to their use. Colantuoni, by contrast, was standing on the fly section of an extension ladder, and knew at the time of his accident that using the ladder in that manner presented a risk of slipping. He had long years of experience in the construction trades, and had used ladders as part of his work. Nor does the claimed absence of evidence of a warningaffect the assumption of the risk defense. As plaintiff himself notes, "[A] person does not assume the risk of a hidden or undisclosed danger, not of common knowledge, in the absence of warning or -7- personal knowledge." James v. Rhode Island Auditorium, 199 A. _____ _______________________ 293, 295 (R.I. 1938). Here, however, plaintiff's own testimony is sufficient evidence of his personal knowledge of the danger to support the defense of assumption of the risk. Finally, the fact that Colantuoni had never seen an accident such as his is irrelevant, as it is sufficient that he knew of the potential for that type of accident to occur. Rickey, 421 A.2d at 543 (R.I. ______ 1980). Compare Soucy v. Martin, 402 A.2d 1167 (R.I. 1979) _______ _____ ______ (plaintiff who had never loaded or carried steel beams and knew nothing about them neither appreciated nor voluntarily assumed the risk involved in moving the beams); Rhode Island Auditorium, ________________________ 199 A.2d at 295-98 (plaintiff attending her first hockey game and who had no prior knowledge of the risk of being struck by a flying puck did not assume the risk of this injury). Plaintiff also contends that summary judgment on the assumption of the risk defense was improper because he presented a sworn affidavit in which he stated that he had no knowledge at the time of the accident of the ladder's propensity to slip. This evidence, submitted after defendants had filed their motions for summary judgment, stands in direct contradiction to his deposition testimony. When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed. 10A C. Wright, A. Miller & M. Kane, Federal Practice ________________ -8- and Procedure 2726, at 30-31 (2d ed. Supp. 1994). See Slowiak _____________ ___ _______ v. Land O'Lakes, Inc., 987 F.2d 1293, 1297 (7th Cir. 1993); ___________________ Trans-Orient Marine v. Star Trading & Marine, 925 F.2d 566, 572- ___________________ ______________________ 73 (2d Cir. 1991); Davidson & Jones Dev. v. Elmore Dev., 921 F.2d _____________________ ___________ 1343, 1352 (6th Cir. 1991). In this case, Colantuoni's statement in his affidavit that "[a]t all times that I had used this ladder, I believed it was safe to use it and I had no knowledge, at that time, of its propensity to slip" clearly contradicts his prior deposition testimony that he realized the ladder might slip. The affidavit does not discuss any earlier confusion at his deposition testimony. His only explanation for the contradiction between the supplemental affidavit and deposition testimony is that the former describes his state of mind at the time of the accident, while the latter describes his state of mind at the time of his deposition. This is clearly not viable. The deposition testimony clearly referred to the time of the accident. His attorney was present at the deposition, and had the opportunity to clarify any incorrect impressions. Moreover, we think it significant that the affidavit was offered only after defendants had filed motions for summary judgment. In these circumstances, we are persuaded that plaintiff's affidavit should be disregarded in considering the propriety of summary judgment. See Slowiak, ___ _______ 987 F.2d at 1297; Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. ______ _____ 1986). -9- In sum, we find that on the record before us, the only reasonable inference to draw is that plaintiff knew of the possibility that the fly part of the extension ladder might slip when he was standing on it, appreciated the prospect that this might happen, and nonetheless chose to use this ladder to tie in the sheet metal duct to the overhead roof fan. We therefore find that, as a matter of law, he assumed the risk of injury, thereby negating any claims of negligence or products liability. III. Breach of Implied Warranty Claim ________________________________ The plaintiff also claimed that Werner was liable for a breach of implied warranty.1 As a threshold element of tort liability for personal injuries under theories of breach of implied warranty of merchantability and fitness for a particular purpose, a plaintiff must prove that the defendant sold a defective product which posed a threat of injury to potential consumers. Scittarelli v. Providence Gas Co., 415 A.2d 1040, ___________ __________________ 1046 (R.I. 1980). Plaintiff has failed to produce any evidence that the ladder was defective, and therefore dangerous. Werner presented evidence that the extension ladder at issue was designed so as to inhibit someone from disassembling it and using the top half separately. Specifically, Werner ____________________ 1It is unclear whether plaintiffs' warranty claim is premised on R.I. Gen. Laws 6A-2-314, which covers the implied warranty of merchantability, or R.I. Gen. Laws 6A-2-315, which covers the implied warranty of fitness for particular purpose, as plaintiff's complaint alleges merely a claim for "breach of implied warranty," and plaintiff fails to elaborate on this claim elsewhere. For the purposes of the case before us, we treat the complaint as encompassing a claim under both sections. -10- submitted engineering drawings depicting the guide grooves which were riveted to the fly section of the ladder between the first and second rungs, and the end caps which were attached to the rails at the bottom of the fly section and the top of the base section. This construction meant that the ladder could only be taken apart by removing the rivets. There was no mechanism to enable the ladder to be separated. In addition, Werner's affidavit, prepared by Werner's vice president in charge of engineering, described the engineering drawings, and stated that the ladder "was manufactured in such a way that the guide grooves on the fly section could not pass through the end caps on the base section, thereby making the ladder nonseparable." Werner also presented evidence of the safety instructions attached to both the base and fly sections of the ladder, which stated that the fly section of the ladder "should not be used as a single ladder unless equipped with feet, ice picks or equivalent." Plaintiff failed to rebut this evidence with any proof that the ladder was easily disassembled, or in any other way defective, and therefore not "merchantable" as a nonseparable extension ladder at the time of sale, nor fit for the particular purpose for which it was used. Instead, plaintiff simply suggests that the fact that Werner gave instructions regarding the use of the fly section of the ladder as a single ladder is proof that the ladder is warrantied for use in a separated state. The evidence, however, is that the ladder was constructed in such a way to prevent it from being taken apart and used in separate -11- pieces. The fact that Werner recognized the possibility of misuse and minimized the danger from such use by providing a warning in no way proves that the ladder was warrantied to be used in such a manner. The party resisting summary judgment "may not rest upon the mere allegations or denials of the . . . pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). There is no trialworthy issue unless there is sufficient competent evidence to enable a finding favorable to the opposing party. Anderson v. Liberty ________ _______ Lobby, Inc., 477 U.S. 242, 248-49 (1986). Colantuoni has failed ___________ to produce any such evidence. We therefore conclude that the district court was correct in granting defendant Werner's motion for summary judgment on the breach of implied warranty claim. The decision of the district court is therefore AFFIRMED. ________________________________________________________ -12-