# United States Court of Appeals
## For the First Circuit

_____

Nos. 99-1066
     99-1102

WILSON TORRES, d/b/a AGRO-INDUSTRIAS DE COMERIO;
ARMANDO TORRES, d/b/a AGRO-INDUSTRIAS DE COMERIO;

Plaintiffs,

ANGEL LUIS TORRES-SANCHEZ,
d/b/a/ AGRO-INDUSTRIAS DE COMERIO;
MELBA TORRES-SANTO; LUIS ANGEL TORRES-SANTOS;
ZULMA TORRES-SANTO; AGRO-INDUSTRIAS DE COMERIO;

Plaintiffs, Appellants,

v.

E.I. DUPONT DE NEMOURS & COMPANY,
a/k/a DUPONT CORP., a/k/a DUPONT CO.;
A, B, C AS UNKNOWN DEFENDANTS;
XYZ INSURANCE CO.,

Defendants, Appellees.

_____

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]
[Jesús A. Castellanos, U.S. Magistrate Judge]

_____

Before

Torruella, Chief Judge,

Coffin, Senior Circuit Judge,

and Lynch, Circuit Judge.

————————————————————

James L. Ferraro, with whom Ana M. Rivero, Kerry A. Raleigh, and Ferraro & Associates, P.A. were on brief, for appellants.

Eric A. Tulla, with whom Jorge L. Córdova, Guillermo Ramos-Luiña, Ramón L. Viñas-Bueso and Rivera, Tulla & Ferrer were on brief, for appellee E.I. Dupont De Nemours and Company, Inc.

_____

July 17, 2000
_____

**TORRUELLA, Chief Judge.** Appellants Angel Luis Torres and Agro-Industrias de Comerío sued E.I. DuPont de Nemours & Company for producing a fungicide that, due to contamination or other defect, allegedly destroyed appellants' papaya crops in 1988. DuPont moved for summary judgment on the basis that the suit was barred both by judicial estoppel and the applicable statute of limitations. The district court granted the judicial estoppel motion only as to Agro-Industrias de Comerío but granted summary judgment as to both appellants on the statute of limitations ground. See Torres v. E.I. DuPont de Nemours & Co., No. 94-2632 (D.P.R. June 22, 1998) ("Torres I"); Torres v. E.I. DuPont de Nemours & Co., No. 94-2632 (D.P.R. Nov. 30, 1998) ("Torres II"). The latter ruling was premised on the court's conclusion that appellants had the requisite legal knowledge of their injury and its cause in 1988, four years prior to the initiation of this suit. We see no error in this determination. Accordingly, we affirm the entry of summary judgment.[1]

## BACKGROUND

### I. Factual Background

In the 1980s, appellants Angel Luis Torres and Agro-Industrias de Comerío were engaged in the cultivation, planting, and sale of papayas in Puerto Rico. They had separate businesses and

---

[1] Our conclusion that this case is barred by the statute of limitations is dispositive. Consequently, we decline to address the district court's ruling regarding judicial estoppel.

finances, but they shared practices, employees, customers, and tracts of land. Appellant Torres was the president of the Board of Directors of Agro-Industrias; while his brother, Armando Torres, was the corporation's general manager and sole shareholder.

Beginning in 1988, appellants purchased Benlate 50 DF, a fungicide manufactured and sold by appellee E.I. DuPont de Nemours & Company, for application to their papaya crops. According to appellants, the Benlate was "either contaminated with one or more herbicides, incompatible fungicides or other chemicals toxic to plants, or was defectively designed, or both." Appellants allege that as a result of this contamination or defect, the Benlate stunted the tree and fruit growth of their papaya plants, caused abnormal root growth, chlorosis, and ultimately, the death of the papaya trees.

In his deposition, Armando Torres outlined the time frame of appellants' injury, stating that during the summer of 1988 the papaya crops of Agro-Industrias and Torres exhibited symptoms of a disease once fumigated with Benlate:

> After the trip [in April of 1988], . . . I was grateful to DuPont who had taken me on a trip to see agriculture. I asked my brother Angel Luis [Torres] what was the product that DuPont distributed in Puerto Rico because I didn't know and he told me that it was Benlate. It was the main one, it was a panacea, the best thing in the world and logically, well, I fumigated the entire plantation with Benlate.
> The symptoms began during the one (1) week period but this extended more, it was a little bit

slower process. During the period of approximately one (1) month after the moment we already became aware that something more deep rooted was failing was when we began to . . . [c]all agronomists to investigate what was happening and high ranking officials, especially [Eugenio Toro,] the person who gave us orientation at the level of Puerto Rico . . . . All of the agronomists from the area, from the Agricultural Extension Service, all of them visited [appellants'] farm . . . .

Deposition testimony from several other witnesses corroborated Armando Torres's account, each indicating that damage to appellants' crops was apparent following the 1988 application of Benlate. Ventura Cruz-Sánchez, an employee who worked with Armando Torres from 1986 to 1989, stated in his deposition that once "we sprayed the poison [onto the papaya crops], the following day we had to pull a machete and start cutting them up." Similarly, Angel Rivera-Rodríguez, appellants' chemicals supplier, testified that he visited appellants' papaya farms both before and after the application of Benlate sometime in 1987 or 1988. Rivera described appellants' crops prior to the application of Benlate as "[a] robust seeding area with lots of fruits and pretty." However, "[a]fter the Benlate, the plantation looked unnourished, yellowish, the fruit falling to the ground without reaching ripeness." Rivera further testified that Armando Torres told him that after the papayas had been sprayed with Benlate "they had become unwell."

Similarly, Eugenio Toro, a tropical fruit specialist employed by the Agricultural Extension Service, testified that by late 1988 or early 1989, he considered the possibility that the damage to appellants' papaya crops was being caused by something physiological, "possibl[y] an intoxication with something." Further, by that time he had rejected disease, lack-of-nutrient problems, or excessive rainfall as potential causes. He recommended that appellants harvest the fruit that was available and abandon the papaya fields.

The testimony presented to the district court was not, however, entirely unequivocal. Ramón Luis Martínez-Zayas, an Agricultural Agent for the Extension Service who visited appellants' farm, testified that the cause of the damage to the papaya plants was not immediately clear. He stated that sometime after 1987, discovering the cause of the damage to the papaya crops "really sort of became a huge jigsaw puzzle because it wasn't only [Angel] Luis [Torres], it was all of the papaya producers and we started making some conjectures as to what could be happening but we really didn't have anything clear as to what was happening as such."

Despite the initial uncertainty, David Berríos, an Area Agronomist for Puerto Rico, testified that he became aware of complaints from farmers in appellants' region relating to the use of Benlate in the late 1980s and that at least one farmer in the region was taking steps to make a claim against DuPont in 1988 or 1989. More

important, one of appellants' clients, Miguel A. Colón-Capeles, testified at his deposition that Armando Torres requested "a certification" of the papayas he had purchased from appellants in 1986, 1987, and 1988. According to Colón-Capeles, Armando Torres stated that he needed the certification "because they had a claim against the DuPont company concerning a chemical which had apparently affected the sowing and the farms and the lands in which they had their 'papaya' farms." He reiterated that Armando Torres "requested that he needed a certification what he had sold to me during the year so as to be able to support his case."

In response to discovery, appellants produced a similar proof of papaya purchases from a second customer, Fermín Rivera Torres. The January 10, 1990 document certified the amount of papaya purchased from Angel Luis Torres from 1984 to 1988.

Due to the alleged destruction of their crops by Benlate, appellants were no longer cultivating papaya as of 1989.

## II. Procedural History

On September 23, 1992, appellants sent a demand letter to DuPont claiming damages in the amount of $4,000,000. Two years later, on October 21, 1994, Wilson Torres, Armando Torres, and Angel Luis Torres, doing business as Agro-Industrias de Comerío, sued E.I. DuPont de Nemours & Company in the Superior Court of the Commonwealth of Puerto Rico. DuPont removed the case to the United States District

Court for the District of Puerto Rico pursuant to the diversity of citizenship statute. See 28 U.S.C. § 1332(a). Following removal, appellants amended the complaint, dropping Armando and Wilson Torres and adding Agro-Industrias de Comerío as a named plaintiff. During the pendency of this action, Angel Luis Torres died and his cause of action was inherited by his heirs.

On March 28, 1998, DuPont filed its first motion for summary judgment. In that motion, DuPont raised two defenses: judicial estoppel and the statute of limitations. DuPont asserted that (1) appellants had failed to disclose their claims in previous bankruptcy actions, and (2) the claims of Agro-Industrias, filed in June of 1997, were time-barred. The district court granted DuPont's motion for summary judgment on the judicial estoppel ground as to Agro-Industrias but denied the motion as to appellant Torres. See Torres I, slip op. at 9-15. The court reasoned that Agro-Industrias was aware of its potential claim against DuPont prior to filing a Chapter 7 bankruptcy petition in 1992, failed to make the required disclosure, and thereafter obtained relief from the bankruptcy court as a result of this misrepresentation. See id. at 11-15. In contrast, the court determined that Torres had failed to comply with the statutory disclosure requirements related to his Chapter 13 bankruptcy proceeding, but, unlike Agro-Industrias, he did not receive relief from the bankruptcy court. See id. at 9-11. Accordingly, appellant

-9-

Torres's claims were not subject to judicial estoppel as a matter of law.  See id.

On June 19, 1998, DuPont filed a second motion for summary judgment, this time alleging that the claims raised by Torres were barred by the statute of limitations.  DuPont argued that Torres did not initiate his claim until more than a year after he possessed actual or deemed knowledge of his injury and its cause.  On June 26, 1998, DuPont raised the identical statute of limitations argument against Agro-Industrias.

In their opposition to the June 19th motion, appellants conceded that they knew that an injury had occurred more than a year prior to the date they filed their claim.  Appellants argued, however, that they were unaware of the identity of the entity responsible for their injury and that, therefore, the statute of limitations did not bar this suit.  In support of this argument, appellants submitted two affidavits that, according to DuPont, contradicted earlier sworn testimony.  DuPont moved to strike the affidavits and argued that they failed to create issues of material fact.

The district court issued a ruling on November 30, 1998 addressing all of the statute of limitations arguments raised by DuPont.  See Torres II.  The court held that the facts, when construed in the light most favorable to the plaintiffs, demonstrated that the statute of limitations was triggered in 1988 as to both plaintiffs.

-10-

See id. at 9-15. Specifically, the district court found that as of 1988 the plaintiffs: (1) were on notice of sufficient facts that, with the exercise of reasonable care regarding a potential claim, should have led them to conclude that they had a legal cause of action, and (2) had actual knowledge that DuPont was responsible for the damages alleged in the complaint. See id. Based on these findings, the district court held that appellants' claims were time-barred. See id. In reaching this result, the district court granted DuPont's motion to strike the affidavits filed in opposition to summary judgment on the basis that "[n]o satisfactory explanation [was] provided in either of the affidavits as to why the prior testimonies . . . changed." Id. at 11.

In addition, the district court held that "[t]he fact that Agro-Industrias, as a corporation, did not form part of the original complaint filed [on] October 21, 1994, is a separate, independent reason for the dismissal of its claims as time-barred." Id. at 12. In short, the court concluded that the filing of the 1994 complaint did "not have any tolling effect" on the statute of limitations as to the corporation because Wilson Torres and Armando Torres -- the original plaintiffs -- did not have the capacity to sue in the name of the corporation in October 1994. Id. at 13.

This appeal followed.

**DISCUSSION**

-11-

## I.  Standard of Review

Summary judgment is appropriate if there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  This Court reviews a grant of summary judgment de novo, "viewing 'the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" Euromotion, Inc. v. BMW of N. Am., Inc., 136 F.3d 866, 869 (1st Cir. 1998) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)); see also Morris v. Government Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994).  We may, however, uphold the district court's order granting summary judgment regardless of whether we reject or adopt its rationale, so long as an "independently sufficient ground" is made manifest by the record.  Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (citing Garside v. Osco Drug, Inc., 895 F.2d 46, 48-49 (1st Cir. 1990)); see also Houlton Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999); Hachikian v. FDIC, 96 F.3d 502, 504 (1st Cir. 1996).  Further, it is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Consequently, "a party opposing summary judgment must 'present definite, competent evidence to

rebut the motion.'" <u>Maldonado Denis</u> v. <u>Castillo-Rodríguez</u>, 23 F.3d 576, 581 (1st Cir. 1994) (quoting <u>Mesnick</u>, 950 F.2d at 822).

## II. Puerto Rico's One-Year Statute of Limitations

This is a diversity suit governed by the law of Puerto Rico. The parties agree that the relevant statute of limitations is provided by article 1868 of the Puerto Rico Civil Code, which is controlling for civil tort actions filed pursuant to article 1802. <u>See</u> 31 L.P.R.A. § 5298. Article 1868 bars any action for recovery of non-contractual damages brought more than one year from the time the aggrieved person has knowledge of the injury. <u>See</u> <u>id.</u> The Supreme Court of Puerto Rico has held that a plaintiff has knowledge of an injury when he has (1) "notice of the injury" and (2) "notice of the person who caused it." <u>Colón Prieto</u> v. <u>Géigel</u>, 15 P.R. Offic. Trans. 313, 330, 115 P.R. Dec. 232, 246 (P.R. 1984).

We first consider the "notice of the injury" requirement. "Notice of the injury occurs when there 'exist some outward or physical signs through which the aggrieved party may become aware and realize that he has suffered an injurious aftereffect, which when known becomes a damage even if at the time its full scope and extent cannot be weighed.'" <u>Kaiser</u> v. <u>Armstrong World Indus., Inc.</u>, 872 F.2d 512, 516 (1st Cir. 1989) (quoting <u>Delgado Rodríguez</u> v. <u>Nazario de Ferrer</u>, 21 P.R. Offic. Trans. 342, 356, 121 P.R. Dec. 347, 360, (P.R. 1988)). Once a plaintiff is on notice of the injury, the plaintiff may "not

-13-

wait for his injury to reach its final degree of development and postpone the running of the period of limitation according to his subjective appraisal and judgment." Ortiz v. Municipio De Orocovis, 13 P.R. Offic. Trans. 619, 622, 113 P.R. Dec. 484, 487 (P.R. 1982).

The second prong of the Colón Prieto test needs little explanation: "'Notice of the person who caused the injury' is required . . . so that the injured person 'may know who to sue.'" Kaiser, 872 F.2d at 516 (quoting Colón Prieto, 15 P.R. Offic. Trans. at 330). As we have previously indicated, "[t]he key inquiry under this prong of the knowledge requirement is whether plaintiff knew or with the degree of diligence required by law would have known whom to sue." Id. (citations and internal quotation omitted); see also Rodríguez-Surís v. Montesinos, 123 F.3d 10, 16 (1st Cir. 1997).

The case law indicates that under the Colón Prieto test a plaintiff is held accountable for both "true knowledge" and "deemed knowledge." In Rodríguez-Surís, this Court explained:

> First, the concept of "true knowledge" applies where a plaintiff is actually aware of all the necessary facts and the existence of a likelihood of a legal cause of action. Second, concepts of "notice" and "deemed knowledge" apply. Under these concepts a plaintiff's subjective awareness is measured against the level of awareness that the plaintiff, having been put on notice as to certain facts and having exercised reasonable care regarding a potential claim, should have acquired.

123 F.3d at 14. Consequently, "actual knowledge is not required where, by due diligence, such knowledge would likely have been acquired." Villarini-García v. Hospital Del Maestro, Inc., 8 F.3d 81, 84 (1st Cir. 1993); see also Rodríguez-Surís, 123 F.3d at 16 ("Once a plaintiff is made aware of facts sufficient to put her on notice that she has a potential tort claim, she must pursue that claim with reasonable diligence, or risk being held to have relinquished her right to pursue it later, after the limitation period has run.").

Finally, "[i]f a plaintiff brings an action more than a year after the injury took place, she bears the burden of proving that she lacked the requisite 'knowledge' at the relevant times." Hidge v. Parke Davis & Co., 833 F.2d 6, 7 (1st Cir. 1987) (citing Iluminada Rivera Encarnación v. Estado Libre Asociado de P.R., 13 Offic. Trans. 498, 501, 113 P.R. Dec. 383, 385 (P.R. 1982)); see also Fragoso v. López, 991 F.2d 878, 887 (1st Cir. 1993); Kaiser, 872 F.2d at 516.

In this case, there is no dispute that the damages alleged by appellants occurred in 1988, more than a year prior to the filing of the complaint. Therefore, the only question is whether appellants have demonstrated that they lacked the requisite legal knowledge of who caused their injury prior to the running of the statutory period. See, e.g., Hidge, 833 F.2d at 7. In their opposition to DuPont's motion for summary judgment, appellants did not dispute that by 1988 they had notice of their injury, the alleged damage to their papaya crops.

Appellants argued, however, that they did not know that Benlate was responsible for their injury until sometime in 1992, when their chemical supplier, Angel Rivera, advised them that Benlate was being recalled.[2] In addition, appellants argued that (1) the first Benlate-related claim initiated in Puerto Rico against DuPont was filed on April 23, 1991, and (2) they could not have reasonably foreseen in 1988 that their damages were caused by Benlate.

Appellants' contention that they lacked the requisite knowledge of who caused their injury prior to 1992 is contradicted by the deposition testimony of Miguel A. Colón-Capeles, which indicates that by December 20, 1989 appellants were preparing a claim against DuPont. As outlined above, Colón-Capeles testified that Armando Torres requested "a certification" of the papayas he had purchased from appellants in 1986, 1987, and 1988 "because they had a claim against the DuPont company concerning a chemical which had apparently affected the sowing and the farms and the lands in which they had their 'papaya' farms." In response to a follow-up question, Colón-Capeles reiterated that Armando Torres "requested that he needed a certification what he had sold to me during the year so as to be able to support his case."

---

[2] Appellants allege that this suit is not time-barred despite being filed in 1994 because the one year statute of limitations was tolled by (1) extrajudicial negotiations held between appellants' lawyers and DuPont and (2) a Benlate class action suit filed in Puerto Rico in March of 1992. In light of its determination that appellants had the requisite legal knowledge of their injury in 1988, the district court did not reach these arguments.

After DuPont moved for summary judgment, appellants attempted to rebut Colón-Capeles's deposition testimony by filing an affidavit from him dated July 10, 1998. In that affidavit, Colón-Capeles states "[a]fter careful reflection, I am unable to recall the reason for which Mr. Torres requested that I provide him with invoices" in 1989. Appellants also filed an affidavit from Armando Torres dated July 8, 1998, stating that he had requested the invoices "in order to submit a claim for federal assistance ("FEMA") relating to Hurricane Hugo."

The district court struck both affidavits on the basis that appellants "failed to justify the suggested changes in testimony and have likewise failed to create a genuine issue of credibility." Torres II, slip op. at 11. The court reasoned:

> The contested affidavits were presented after DuPont moved for summary judgment. No satisfactory explanation is provided in either of the affidavits as to why the prior testimonies given by Colón Capeles and Armando Torres changed . . . . Without an appropriate explanation as to why the testimony changed, "there are no facts suggesting why a credibility question exists and the nonmoving party should not be allowed to manufacture a question of fact to delay resolution of the suit."

Id. (quoting 10A Charles Alan Wright et al., Federal Practice & Procedure § 2726 (3d ed. 1998)). The district court's determination is amply supported by the law and the record.

It is settled that "[w]hen an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and

resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." Colantuoni v. Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994); see also Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1297 (7th Cir. 1993); Trans-Orient Marine v. Star Trading & Marine, 925 F.2d 566, 572 (2d Cir. 1991); Davidson & Jones Dev. v. Elmore Dev., 921 F.2d 1343, 1352 (6th Cir. 1991).

Here, as in Colantuoni, appellants offered the affidavits of Miguel Colón-Capeles and Armando Torres "only after defendants had filed motions for summary judgment." 44 F.3d at 5. Notably, the post-summary judgment affidavit of Colón-Capeles does not indicate that there was any confusion at the time of his deposition testimony, see, e.g., Colantuoni, 44 F.3d at 5, nor does it allege that the prior testimony was in error. In fact, Colón-Capeles's affidavit makes no reference to the contrary statements in his deposition at all. As the district court indicated, there is simply nothing in the record that provides *any* explanation for why Colón-Capeles changed his testimony. See Torres II, slip op. at 10.

Armando Torres's July 8, 1998 affidavit fares no better. It states:

> On or about December 20, 1989, I asked Miguel Colón [Capeles] of Cheche Tropical Products to provide me with certifications of the amount of papaya that he purchased from Agro Industrias from 1986 to 1988 in order to submit a claim for

-18-

> federal assistance ("FEMA") relating to Hurricane
> Hugo.  I did not ask Mr. Colón [Capeles] to
> prepare the certification for a claim against
> DuPont since I did not become aware, until the
> summer of 1992, that my use of Benlate 50 DF was
> responsible for the loss of my papaya
> plantations.

However, at his January 23, 1998 deposition, Armando Torres testified that he either never made a claim to the Federal Emergency Management Agency ("FEMA") or, at the very least, he did not recall whether he had made a claim to FEMA.  In addition, appellants' responses to DuPont's interrogatories contain two admissions that flatly contradict Armando Torres's July 8, 1998 affidavit.  First, appellants stated that Hurricane Hugo damaged plantains.  The certifications prepared by Colón-Capeles refer to papaya, not plantains.  Second, appellants stated that as of 1989, the year Hurricane Hugo struck Puerto Rico, they were no longer planting papaya.  Again, Armando Torres's affidavit provides no explanation for these contradictions.

This Court "review[s] the district court's decision as to 'the evidentiary materials it will consider in deciding a motion for summary judgment' only for 'a clear abuse of discretion.'" Lennon v. Rubin, 166 F.3d 6, 8 (1st Cir. 1999) (quoting EEOC v. Green, 76 F.3d 19, 24 (1st Cir. 1996)).  In this case, we see no abuse of discretion.  Accordingly, we affirm the district court's decision to strike the affidavits of Miguel Colón-Capeles and Armando Torres.  See Colantuoni, 44 F.3d at 4-5.

Consequently, as the district court correctly determined, Colón-Capeles's deposition testimony is uncontradicted and clearly indicates that appellants possessed the requisite legal knowledge of their injury and who caused it prior to the statutory period. While we believe that this evidence is sufficient to dispose of this case, we note that there is ample additional evidence in the record to support the district court's ruling. This evidence includes: (1) Armando Torres's testimony that, in April 1988, appellants fumigated their entire papaya plantations with Benlate; (2) Armando Torres's testimony that the injury to the papaya crops was evident "during the one (1) week" following this spraying and, within a month thereafter, "we already became aware that something more deep rooted" had occurred to the crops; (3) the testimony of Angel Rivera, appellants' chemical supplier, stating that after the application of Benlate to appellants' papaya the plants looked "unnourished, yellowish, the fruit falling to the ground without reaching ripeness"; (4) Rivera's further testimony that Armando Torres told him that appellants' crops "had become unwell" after they were sprayed with Benlate; (5) the testimony of Eugenio Toro, an expert from the Agricultural Extension Service, stating that by late 1988 or early 1989 he had determined that "something was happening physiologically in the [papaya] plant[s]," possibly "an intoxication," and that he had ruled out disease, lack-of-nutrient problems, and excessive rainfall as potential causes of the damage; and

(6) the testimony of Ventura Cruz-Sánchez, a farm worker employed by appellants, stating that after the plants were sprayed with Benlate "the following day we had to pull a machete and start cutting them up."

Based on this evidence, in addition to the testimony of Colón-Capeles, the district court held that appellants "possessed the necessary information of whom to sue or that with the degree of diligence required by law they should have known who to sue by 1988." See Torres II, slip op. at 12. We agree. Accordingly, we affirm the district court's ruling that the statute of limitations was triggered in 1988 and that therefore appellants' claims are time-barred under Article 1868. See 31 L.P.R.A. § 5298.

In reaching this determination, we are in agreement with the district court that whether or not appellants received notice that Benlate was being recalled in 1992 or that the first Benlate claim was filed in 1991 is irrelevant. Once appellants were put on notice of a potential legal cause of action, the statute of limitations began to run. Additional information that appellants may or may not have later acquired is not sufficient to create a genuine issue of material fact.

## CONCLUSION

For the reasons stated above, we **affirm**.