**Angela HINKLEY, Plaintiff,**

v.

**Charles BAKER, Defendant.**

**No. 99–CV–286–B.**

United States District Court,
D. Maine.

Nov. 21, 2000.

Sumner H. Lipman, Lipman & Katz, Augusta, ME, Tracie L. Adamson, Lipman & Katz P.A., Augusta, ME, for Angela Hinkley, plaintiff.

J. William Druary, Jr., Alton C. Stevens, Marden, Dubord, Bernier & Stevens, Waterville, ME, Robert E. Sandy, Sherman & Sandy, Waterville, ME, for Charles Baker, defendant.

## ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SINGAL, District Judge.

Before the Court is Defendant's Motion for Partial Summary Judgment on Count III of Plaintiff's Complaint, intentional infliction of emotional distress, made pursuant to Fed.R.Civ.P. 56(d). For the reasons discussed below, Defendant's Motion for Partial Summary Judgment is DENIED.

## I. STANDARD OF REVIEW

A federal court grants summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the facts "in the light most amicable to the party contesting summary judgment, indulging all reasonable inferences in that party's favor." *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993). At the same time, the nonmovant cannot rely on " 'conclusory allegations, improbable inferences, and unsupported speculation.' " *Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 39 (1st Cir. 2000) (quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st

Cir.1990)). Pursuant to this standard, the Court describes the relevant facts below.

## II. BACKGROUND

Plaintiff, Angela Hinkley, began attending first grade at Shirley Elementary School in 1981, when she was five or six years old. Defendant, Charles Baker, was Hinkley's teacher and principal at Shirley Elementary. Baker taught kindergarten through third grade at the two-room schoolhouse.

■ In her Complaint, Hinkley alleges that between approximately 1982 and 1985, Baker often touched her and other students in a sexually inappropriate manner. Specifically: (1) Baker would regularly hug and squeeze Hinkley while nibbling her ears and kissing her face, often with an open mouth and often for a prolonged period of time; (2) Baker would stand behind Hinkley, place his hand inside the front of her shirt, feel her bare chest and touch her nipples; (3) Baker would order Hinkley and other students to rub his back and comb his hair; (4) Baker would take Hinkley to sit on a small bed in the back of the classroom for sick students, although she was not ill, and there he would hug her, kiss her ears, and blow in her ears and down her neck; and (5) while sitting on the sick bed, Baker would order Hinkley to stroke his neck and back. In addition, Baker occasionally would take Hinkley sledding. While sledding, Baker would make Hinkley sit between his legs, with her back and buttocks pressed against his groin. When the sled would stop, Baker would roll over on top of Hinkley, and remain laying on top of her for an extended period of time.[1] Hinkley alleges that these incidents of physical touching offend-

---

1. In his reply memorandum, Defendant argues vociferously that Plaintiff has improperly supplemented the factual record by raising "new allegations". (Def.'s Reply to Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ.J. at 3, Docket # 33.) For instance, during her deposition Plaintiff stated that Defendant "reached over my shoulder and stuck his hand down my chest underneath my shirt." (Angela Hinkley Dep. at 89.) Defendant takes issue with Plaintiff recently averring in an affidavit, filed with her objection to summary judgment, that Defendant "rubbed my chest for an extended period of time and actually felt my nipples." (Angela Hinkley Aff. ¶ 2 (Docket # 26).) Likewise, while Plaintiff previously brought up that Defendant kissed her, not until she filed her affidavit does she mention that he kissed her regularly, that he kissed her with an open mouth and that he kissed her for a prolonged period of time. Also, Defendant finds it improper that during her deposition Plaintiff said that Defendant would lay on top of her after sledding down a hill, but only in her affidavit does she state that "During these incidents, Defendant's groin would be placed on top of me and directly against me. Often, if I landed face down when rolling off of the sled, Defendant would lay directly on top of me or from the side such that his groin was pressed against my buttocks." (Id. ¶ 6.) Relying on Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13 (1st Cir.2000), Defendant asserts that these statements in Plaintiff's affidavit amount to new allegations that the Court must exclude from consideration. See id. at 20 ("It is set-

tled that '[w]hen an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed,'") (citing Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4–5 (1st Cir. 1994)). Plaintiff, however, has not made any allegations at all contradictory to her prior statements. See Torres, 219 F.3d at 16–17, 20 (deponent contradicting prior statement); Colantuoni, 44 F.3d at 4–5 (same). Also, she has not brought up any additional incidents or events. Rather, Plaintiff merely has elaborated on the details surrounding the conduct alleged in her Complaint. See Fed.R.Civ.P. 56(c) (inviting party opposing motion for summary judgment to file affidavits to demonstrate a genuine issue of material fact). Defendant makes much ado about the fact that while being deposed, Defendant's counsel said to Plaintiff "[After being interviewed by two doctors and myself], you have told everybody everything you can remember that Mr. Baker did that you felt to be bad or offensive[,]" to which she replied in the affirmative (Angela Hinkley Dep. at 91.) The Court finds that this exchange does not foreclose Plaintiff from providing additional details regarding the alleged incidents of abuse. Therefore, the Court sees no reason to exclude any of the statements made in Plaintiff's affidavit. Furthermore, even if the Court did agree with Defendant on this matter and ignored the contents of Plaintiff's affidavit, it would not alter the Court's decision herein.

ed her and caused her severe emotional distress, such as fear and depression, and have caused her to develop obsessive compulsiveness. In addition, Hinkley stated during deposition that Baker was a perfectionist who demanded that his students perform with exactness in the classroom.

In her Complaint, Hinkley makes claims of violation of her Due Process rights, actionable under section 1983 of the Civil Rights Act (Count I), assault (Count II), intentional infliction of emotional distress (Count III) and negligent infliction of emotional distress (Count IV). In addition, Hinkley claims that Baker should be ordered to pay punitive damages (Count V). In his Motion for Partial Summary Judgment, Baker specifically argues that the Court should enter judgment on Count III in his favor.[2] The Court now considers Plaintiff's claim of intentional infliction of emotional distress.

## III. DISCUSSION

■ To state a claim for intentional infliction of emotional distress ("IIED") under Maine law, a plaintiff must establish that: (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. *E.g., Maine Mut. Fire Ins. Co. v. Gervais,* 715 A.2d 938, 941 (Me.1998) (citing *Vicnire v. Ford Motor Credit Co.,* 401 A.2d 148, 154 (Me.1979) (adopting Restatement (Second) of Torts' formulation of IIED)). Attacking the sec-

ond and third prongs of the IIED test, Defendant argues that his alleged conduct was not so extreme and outrageous to rise to the level of an IIED claim, and that Plaintiff has failed to show that the alleged touchings were the proximate cause of her emotional distress. The Court considers both of these arguments.

### A. Extreme and Outrageous Conduct

■ Defendant argues that the alleged conduct—touching Plaintiff's bare chest area, hugging her, ordering her to rub his back and neck and to comb his hair, holding her against his groin while sledding, laying on top of her while sledding, blowing on her neck and ears, nibbling her ears, and kissing Plaintiff on the face, neck and ears—was not "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community". *E.g., Vicnire,* 401 A.2d at 154 (internal quotations omitted). To bolster this argument, Defendant contends that all of the alleged behavior could have innocent explanations. When considering summary judgment, however, the Court must indulge all reasonable inferences in favor of the nonmoving party. *See, e.g., Pagano,* 983 F.2d at 347. Considering the facts in the light most favorable to Plaintiff, the Court reasonably infers that Defendant's conduct was not innocent.

Maine IIED cases have not addressed the specific issue of what types of sexual misconduct are sufficient to establish an IIED claim. *See, e.g., Harkness v. Fitzgerald,* 701 A.2d 370, 371 (Me.1997) (affirming summary judgment against IIED claim based on sexual abuse because statute of limitations had ran). Plaintiff cites *Doe v. Beaumont I.S.D.,* 8 F.Supp.2d 596 (E.D.Tex.1998), in which two eleven year-old fourth grade girls complained that a teacher draped his arm over their shoul-

---

**2.** Defendant does not address Counts I, II, IV or V in the Motion for Summary Judgment. Rather, Defendant has requested that the Court dismiss Counts I, II and IV in a Motion

to Dismiss (Docket # 8). Therefore, the Court only considers Count III for the purposes of this Order.

ders, with his hand touching their chest areas. *See id.* at 602–03. The plaintiffs raised numerous claims against the school and teacher, including IIED.[3] Finding that the alleged touchings were extreme and outrageous, the court denied the defendant's motion for summary judgment and allowed the jury to hear the plaintiffs' IIED claim. *See id.* at 615.

Defendant tries to distinguish *Beaumont* from the within case by arguing that because Plaintiff was a prepubescent child with undeveloped breasts, touching her chest area does not rise to the level of extreme and outrageous conduct necessary to satisfy the criteria for an IIED claim.[4] In *Beaumont,* however, there was no discussion as to whether or not the eleven year-old plaintiffs were developed at the time of their alleged molestation. Although the court did refer to the plaintiffs as having "breasts" once in the opinion, the court otherwise used the phrase "chest area" to describe where the teacher had touched them. *See id.* at 602–03. Thus, it appears that it was not important to the *Beaumont* court whether or not the plaintiffs were developed. *See id.* Furthermore, the defendant in *Beaumont* touched the girls' chest areas over their clothing, while the present Plaintiff accuses Defendant of reaching underneath her shirt to touch her chest. *See id.* Moreover, the Court agrees with Plaintiff's argument that a young girl understands her chest to be one of her "private parts". (Pl.'s Obj. to Def.'s Mot. for Summ.J. at 9 (Docket # 26).)

■ Therefore, based on all of the alleged incidents, the Court agrees with Plaintiff's argument that a reasonable jury could find that Defendant's conduct was so extreme and outrageous as to exceed all possible bounds of decency and that the conduct must be regarded as atrocious, and utterly intolerable in a civilized community. *See Colford v. Chubb Life Ins. Co.,* 687 A.2d 609, 616 (Me.1996). It is up to the courts to determine whether a charge of IIED meets all of the criteria, including whether the alleged acts were sufficiently extreme and outrageous, but "[w]here reasonable [people] may differ, it is for the jury, subject to the control of the Court, to determine whether, in a particular case, the conduct has been sufficiently extreme and outrageous to result in liability." *Id.* (quoting *Rubin v. Matthews Int'l Corp.,* 503 A.2d 694, 699 (Me.1986) (quoting Restatement (Second) of Torts, § 46 comment h, at 77 (1965))). The Court finds that reasonable persons could differ on whether Defendant's behavior meets the IIED standard, so it is a question best left to the jury.

**B. Proximate Cause**

■ Next, Defendant contends that Plaintiff has failed to differentiate between her claims of injuries, thereby failing to demonstrate proximate cause. Specifically, Defendant argues that Plaintiff has not established a causal link between Defendant's alleged acts of improper touching and her consequent mental suffering, and that her emotional distress could have resulted from other, non-actionable conduct. Defendant bases this argument on *Champagne v. Mid–Maine Med. Ctr.,* 711 A.2d 842 (Me.1998), in which the plaintiff, a new mother, suffered mental distress after learning that hospital staff mistakenly allowed another woman to nurse her newborn infant. *See id.* at 844. The plaintiff filed suit for several torts, including IIED and negligent infliction of emotional dis-

---

**3.** While deciding this IIED claim, the *Beaumont* court applied Texas law, which is substantially similar to Maine law in that both states have adopted the IIED tort as defined by the Restatement (Second) of Torts. *See Beaumont,* 8 F.Supp.2d at 615; *Twyman v. Twyman,* 855 S.W.2d 619, 621–22 (Tex.1993); *Vicnire,* 401 A.2d at 154.

**4.** The Court notes that the current record does not reflect whether or not Plaintiff had developed breasts at the time of the alleged incidents.

tress ("NIED"), which is a wholly separate tort.[5] *See id.* at 843. The plaintiff based her NIED claim on two separate events: her child breastfeeding from the wrong mother, and the hospital staff failing to inform her adequately of the risks and consequences associated with giving birth in a hospital. *See id.* at 846. The mistaken breastfeeding was not actionable under NIED because it occurred to the child, not to the mother herself, and NIED does not provide a remedy for such "indirect" victims. *See id.* Assuming for the sake of argument that the failure to adequately warn the plaintiff could amount to a cause of action under NIED, the court found that the evidence "did not provide any basis for a factfinder to determine" whether the mother's mental anguish arose from the hospital failing to adequately warn her or from the hospital allowing the wrong mother to nurse the infant. *See id.* "If a plaintiff makes an undifferentiated claim of injuries based on two discrete acts, and one of the acts cannot provide a basis for recovery as a matter of law, a factfinder cannot speculate about the causal link between the surviving act and the injuries alleged." *Id.* (citing *Unobskey v. Continental Ins. Co.*, 147 Me. 249, 86 A.2d 160, 164 (1952) (dismissing claim for coverage of damage to building caused by wind tearing open door, which permitted water to enter building, because insurance policy specifically covered damage caused by wind, but not water)). Thus, the Law Court held that the plaintiff could not recover on her NIED claim.

The within Defendant argues that *Champagne* prevents Plaintiff from recovering under IIED, because not only has Plaintiff alleged that Defendant inappropriately touched her in a sexual manner, but also Plaintiff stated during her deposition that Defendant required his students to be perfect. Thus, Defendant argues that this case involves two discrete acts: Defendant inappropriately touching Plaintiff, and Defendant demanding perfection from Plaintiff. Plaintiff has alleged that the instances of physical contact offended her, induced fear in her, made her feel depressed, and caused her to develop perfectionist tendencies. Defendant contends that requiring students to perform flawlessly cannot constitute grounds for an IIED claim, and therefore a factfinder would have no choice but to speculate about which of those two discrete acts caused Plaintiff's injuries.

The Court notes, however, that Defendant's perfectionist demands are something that arose during deposition; they are not mentioned in the Complaint and they do not appear to form any part of Plaintiff's claims. *Cf. Champagne*, 711 A.2d at 846 (plaintiff raised issue of failure to adequately warn in her notices of claim for malpractice); *Unobskey*, 86 A.2d at 164 (plaintiff's claim for property damages based on both wind and water). Therefore, Plaintiff has not made claims "based on two discrete acts". *See id.* Additionally, Plaintiff has provided a factual basis showing a causal link between the alleged physical contact and her emotional distress. *See Champagne*, 711 A.2d at 846 (dismissing claim because plaintiff failed to provide "any basis" showing a causal link). In *Champagne*, the plaintiff had supplied evidence showing that she felt emotional distress because her son had been breastfed by another woman, but she had also made the bald assertion, with no evidentiary support, that the defendant hospital's failure to warn caused her emotional harm too. *See id.* In the present case, the evidence shows that the alleged contact— Defendant touching Plaintiff's chest area, holding her against his groin while sledding, laying on her while sledding, ordering her to rub his back and neck and to

---

5. This argument of proximate cause and undifferentiated claims is not particular to torts of emotional distress. *See Unobskey v. Continental Ins. Co.*, 147 Me. 249, 86 A.2d 160, 164 (1952) (involving insurance claim). The fact that Defendant's undifferentiated claim argument pertains to IIED and the undifferentiated claim argument in *Champagne* involves NIED is simply a somewhat confusing coincidence irrelevant to this Court's decision.

comb his hair, blowing in her ears and down her neck, nibbling her ears, and kissing her face and neck—could have caused the injuries that Plaintiff alleges. Thus, a jury would not have to speculate in determining that such inappropriate physical contact proximately caused Plaintiff emotional harm. Therefore, this matter of undifferentiated injuries does not apply to this case, and does not prevent Plaintiff's IIED claim from proceeding to a jury trial.

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion for Partial Summary Judgment on Count III is DENIED.

SO ORDERED.