JUAN JOSÉ ORTIZ, demandante y recurrente, *v.* MUNICIPIO DE OROCOVIS, demandado y recurrido.

Número: R-80-576      Resuelto: 28 de octubre de 1982

*José S. Brenes-La Roche*, abogado del recurrente; *José A. Masini Soler*, abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

El demandante fue atendido en el Centro de Salud de Orocovis el 25 julio, 1977 de heridas que recibió mientras conducía su motora. A pesar de informarle al médico que no podía mover el brazo izquierdo, éste le dijo que no había fractura y lo envió a su casa sin ordenar radiografía. Como

el dolor persistía, el demandante acudió al Hospital Menonita de Aibonito donde —luego de tomarle una radiografía— "le informaron [el 4 agosto, 1977] de la existencia de una fractura en el brazo izquierdo y le notificaron, además, de la posibilidad de un daño permanente debido a la demora en enyesarle el brazo lesionado".[1] No hay duda de que en esa fecha y por autorizado criterio el demandante supo que el médico que lo atendió en el Centro de Salud de Orocovis incurrió en negligencia y mala práctica profesional al no detectar la fractura y al no enyesar el brazo. Se le suplió la información que es punto de arranque de prescripción extintiva de la acción y que la Ley Núm. 74 de 30 mayo, 1976 sobre responsabilidad profesional médico-hospitalaria, Art. 41.090 del Código de Seguros, identifica como el *momento en que el daño fue descubierto.*

La prescripción de la acción de daños por negligencia médica ha sido objeto de legislación especial con lenguaje diferente al del Art. 1868, 2do párr. C.C. que se remite al momento en que "lo supo el agraviado". *Rivera Encarnación* v. *E.L.A.*, 113 D.P.R. 383 (1982). La citada Ley Núm. 74 de 30 mayo, 1976 sobre responsabilidad de profesionales en el cuidado de salud, Art. 41.090 del Código de Seguros, 26 L.P.R.A. sec. 4109, dispone:

*Términos de prescripción*

(1) Los términos de prescripción contenidos en esta sección serán los únicos aplicables a las acciones de daños por culpa o negligencia (*malpractice*) que se inicien contra profesionales en el cuidado de salud e instituciones para el cuidado de salud.

La acción por alegados daños por culpa o negligencia (*malpractice*) comenzará, independientemente de lo dispuesto en otra ley, dentro de un año a partir de la fecha en que ocurrió el daño que dio lugar a la acción, o *dentro de un año desde el momento en que el daño fue descubierto, o debió haber sido des-*

---

[1] Hechos probados incluidos en la sentencia de la Sala de Aibonito.

*cubierto* con la debida diligencia. En ningún caso se podrá iniciar la acción más tarde de dos años, desde la fecha en que ocurrió el daño que dio lugar a la causa de acción. (Énfasis nuestro.)

El demandante es maestro de ciencias y matemáticas, con grado de Bachiller en Artes (Educación). A la pág. 5 de su alegato admite que el 4 agosto, 1977 se enteró de la negligencia del demandado que consistió, según expresa, en que "tenía que enyesarlo y no lo enyesó". Por propia admisión, ya para esa fecha *había descubierto el daño* con la certeza óptima de diagnóstico y criterio médico. Ese conocimiento o descubrimiento es el exclusivo punto de partida del plazo de prescripción que para este caso acepta la ley especial citada que en lenguaje categórico impone el término "independientemente de lo dispuesto en otra ley". Téngase en cuenta que tan respetable es el derecho del agraviado a reclamar *en tiempo hábil,* como el del demandado a sentirse libre de pleito y proceso una vez transcurrido —sin acción— el plazo señalado en la ley. La incorporación de elementos imponderables a la duración del término tales como la ignorancia de la cuantía del daño o del resultado final del acto culposo enerva la cualidad esencial de fijeza y certidumbre en la prescripción que tan sabiamente ha protegido nuestra jurisprudencia en *González* v. *Pérez,* 57 D.P.R. 860, 866-867 (1941); *Cruz* v. *González,* 66 D.P.R. 212 (1946); *Sánchez* v. *Cooperativa Azucarera,* 66 D.P.R. 346, 349 (1946). Ningún caso, no empece el grado de espontánea simpatía y solidaridad del juzgador con el dolor humano, debe producir el colapso de una norma universal reguladora de "toda clase de derechos emanados de las relaciones sociales y de las condiciones en que se desarrolla la vida". *González,* supra, a la pág. 867. La exigencia de certeza, que es savia de las instituciones de Derecho civil, demanda la exclusión de elementos evasivos, hasta donde sea posible, en el cómputo del término de prescripción.

Ya en conocimiento del daño, el demandante no

podía esperar el desarrollo y grado final de su lesión y posponer a su arbitrio y apreciación subjetiva el curso del plazo de prescripción. Tanto Castán Tobeñas [2] como Scaevola [3] incorporan a sus textos como doctrina la Sentencia de 13 febrero, 1929, a saber: En las acciones para exigir responsabilidad civil se cuenta el término de prescripción a partir del momento en que tuvo conocimiento del daño el que lo sufrió, aunque no es preciso que conozca éste la cantidad líquida importe de ese daño. No quiebra ese principio de conocimiento del agraviado por la sola circunstancia de que éste ignore la cuantía o magnitud de los daños causados. La concreción o fijación cuantitativa del daño es tema relegable para el tiempo de ejecución de sentencia.

No es este el caso de daño embrionario o latente, no identificable hasta pasado el año de prescripción. [4] El daño era ya una realidad perceptible desde que el 4 agosto, 1977 en el Hospital Menonita enteraron al demandante, en el más simple lenguaje, que había sido víctima de mala práctica médica en el Centro de Salud porque al no descubrir la fractura con Rayos-X fallaron en inmovilizar el brazo en yeso. El año para ejercitar la acción ya había expirado cuando el perjudicado interpuso demanda el 1° diciembre, 1978.

■ Recordemos que el fundamento de prescripción debe concebirse objetivamente, pues por ella "se asegura la estabilidad de la propiedad y la certidumbre de los demás

---

[2] *Derecho Civil Español, Común y Foral*, 10ma ed., Madrid, Ed. Reus, 1963, T. 1, Vol. 2, pág. 846.

[3] *Código Civil*, Madrid, Ed. Reus, 1965, T. XXXII, Vol. 2, pág. 881.

[4] Más que a la espera de dimensión o cuantía del daño, los hechos apuntan hacia inercia y abandono del demandante, que formando parte de una sociedad de conocida inclinación a la litigación, con un dictamen de 1° de junio, 1978 confirmatorio del primero, todavía espera 6 meses más para instar la demanda el 1° diciembre, 1978. Su inactividad sobrepasó hasta el criterio general del Art. 1869 C.C.: "El tiempo para la prescripción de toda clase de acciones, cuando no haya disposición especial que otra cosa determine, se contará desde el día en que pudieron ejercitarse." 31 L.P.R.A. sec. 5299.

derechos. La economía y la vida jurídica sufrirían grave quebranto si el estado de hecho, representado por el ejercicio o no ejercicio de un derecho, no viniere a convertirse por el transcurso del tiempo en un estado de derecho inatacable". Castán Tobeñas, *Derecho Civil Español, Común y Foral*, 10ma ed., 1963, T. 1, Vol. 2, pág. 834.

Se ajusta a Derecho la sentencia de instancia contra la que se recurre, que estimó la moción de sentencia sumaria del municipio demandado, basada en prescripción. *Se dictará sentencia a tenor de la Regla 50 del Reglamento de este Tribunal por la que se denegará la expedición de auto de revisión.*

Los Jueces Asociados Señores Torres Rigual y Negrón García concurren en el resultado. El Juez Asociado Señor Irizarry Yunqué no intervino.