Juan Ramon **GUZMAN–CAMACHO**,
Plaintiff

v.

**STATE INSURANCE FUND CORP.**,
et al., Defendants.

**Civil No. 04–1496(SEC).**

United States District Court,
D. Puerto Rico.

March 2, 2006.

---

Jose F. Quetglas, Quetglas Law Office, San Juan, PR, for Plaintiff.

Roberto Sueiro–Del–Valle, Roberto Sueiro Del Valle LLM, Ruben A. Rivera–Rosa, Sanchez, Betances, Sifre, Munoz, Noya & Rivera Law Offices, PSC, Luis F. Montijo, Nuyen Marrero–Bonilla, Montijo Law Office, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, Senior District Judge.

Pending before the Court is Co-defendant State Insurance Fund Corp.'s, Nicolás López–Peña's, María Isabel Lastra's, and their respective conjugal partner-

ships', motion for summary judgment (Docket # 45).[1] Plaintiff filed an opposition (Dockets # # 54–56). Co-defendants replied (Dockets # # 81 & 82), Plaintiff sur-replied (Docket # 83) and Co-defendants filed a response thereto (Docket # 76). Also pending before the Court is Co-defendant Hernández–Claudio's separate motion for summary judgment as to Plaintiff's claims against him on alternate grounds (Dockets # # 87 & 88). Co-defendants State Insurance Fund, López–Peña, Lastra, and their respective conjugal partnerships[2], as well as Plaintiff filed respective oppositions thereto (Dockets # # 96 & 103–104). Co-defendant Hernández–Claudio replied (Docket # 106) and Co-defendants State Insurance Fund, López–Peña, Lastra, and their respective conjugal partnerships sur-replied (Dockets # # 113 & 114). After carefully examining the parties' arguments, the case record and the applicable law, both motions for summary judgment will be **DENIED.**

### Factual Background

Plaintiff Juan Ramón Guzmán–Camacho, resident of Florida, filed the above-captioned diversity suit under Articles 1802 and 1803 of the Puerto Rico Civil Code claiming relief for the alleged medical malpractice which purportedly caused the death of his father, Mr. Ramón Guzmán–Torres. 31 P.R. Laws Ann. §§ 5141–5142. Plaintiff alleges that, on February 4, 2002, as a result of a work-related accident, Mr. Guzmán–Torres was taken to the Industrial Hospital. There, Mr. Guzmán–Torres was treated for injuries to his abdomen, spleen, and open wounds to his tibia and fibula (Docket # 1 at ¶ 28). Plaintiff alleges, however, that the fractures and wounds in Mr. Guzmán–Torres' legs were not immediately and properly treated (Docket # 1 at ¶ 29). As a result thereof, Plaintiff contends, Mr. Guzmán–Torres developed sepsis and died on February 16, 2002 (Docket # 1 at ¶ 30).

Plaintiff further avers that it was not until October 20, 2003 that he became aware that the treatment received by his father was negligent and that he had an action for medical malpractice against the hospital and treating physicians (Docket # 1 at ¶ 31). As such, on May 26, 2004 Plaintiff filed the instant action against the State Insurance Fund Corp., its administrator, Mr. López–Peña, its medical director, Dr. Lastra, the attending orthopedic surgeon, Dr. Hernández–Claudio, and the attending surgeon, Dr. Victor Feliz[3].

1. On March 23, 2005, Co-defendant Julio Hernández–Claudio filed a motion requesting to join said Co-defendants' arguments in favor of summary judgment (Docket # 50). On even date, the Court granted Co-defendant Hernández–Claudio's motion (Docket # 51).

2. Subsequently, Co-defendants State Insurance Fund Corp., Nicolás López–Peña, María Isabel Lastra, and their respective conjugal partnerships, filed a Crossclaim against Co-defendant Hernández–Claudio and have requested leave from the Court to file a Third Party Complaint against Co-defendant Hernández–Claudio's insurance company. *See* Dockets # # 112 & 123. Given our decision to deny Co-defendant Hernández–Claudio's request for summary judgment, Co-defendants State Insurance Fund's, López–Peña's and Lastra's request for leave to file a Third Party Complaint against SIMED is **GRANTED.** Said Co-defendants are **ORDERED** to file the Third Party Complaint by **March 10, 2006.**

3. Summons were issued by the Clerk of the Court as to all Defendants. Since then, Co-defendants State Insurance Fund Corp., López–Peña, Lastra and Hernández–Claudio have appeared with legal representation, answered the complaint, conducted discovery and filed dispositive motions. Co-defendant Feliz has failed to appear and/or answer the complaint. However, to date, almost two (2) years after the filing of his complaint, Plaintiff has not moved for default against Co-defendant Feliz. As such, Plaintiff is hereby **ORDERED to show cause by March 10, 2006** why his claims against Co-defendant Feliz should not be dismissed with prejudice for

Co-defendants moved for summary judgment alleging that Plaintiff's claims are barred by the one year statute of limitations for actions under Art. 1802 (Docket # 45) and Co-defendant Hernández–Claudio avers that he is entitled to immunity from suit for being a government-employed medical doctor (Docket # 87).

## Standard of Review

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *NASCO, Inc. v. Pub. Storage, Inc.*, 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. *U.S. v. One Parcel of Real Prop.*, 960 F.2d 200, 204 (1st Cir.1992); *see also Boston Athletic Assn. v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989); *Medina–Munoz v. R.J. Reynolds Tobacco*, 896 F.2d 5, 8 (1st Cir.1990) ("[a] 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir.1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, *supra*, § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Martinez v. Colon*, 54 F.3d 980, 983–84 (1st Cir.1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machs.*, 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the nonmoving party's case," *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994); the nonmovant has a "corresponding obligation to offer the court more

---

failure to prosecute. **Failure to comply with this order will result in the dismissal with** prejudice of **Plaintiff's claims against Co-defendant Feliz.**

than steamy rhetoric and bare conclusions." *Lawton v. State Mut. Life Assurance Co. of Am.*, 101 F.3d 218, 223 (1st Cir.1996). Furthermore, "the nonmovant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trialworthy issue. . . . Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States*, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina–Munoz*, 896 F.2d at 8, (*quoting Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")

Local Rule 56(b), moreover, requires the moving party to file annexed to the motion "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." Unless the nonmoving party controverts this statement, all the material facts set forth therein "shall be deemed to be admitted." *Id.; Cosme–Rosado v. Serrano–Rodriguez*, 360 F.3d 42 (1st Cir.2004). This is the so-called "anti-ferret rule." *See, e.g., Orbi, S.A. v. Calvesbert & Brown*, 20 F.Supp.2d 289, 291 (D.P.R.1998). While failure to comply with this rule does not automatically warrant the granting of summary judgment, "it launches the nonmovant's case down the road toward an early dismissal." *Tavarez v. Champion Prods., Inc.*, 903 F.Supp. 268, 270 (D.P.R.1995).

### Applicable Law and Analysis

#### 1. Time Barred

Since this is a diversity suit under Article 1802 of the Puerto Rico Civil Code, the statute of limitations and its date of accrual are governed by Puerto Rico law, in this case, Article 1868 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5298(2), and the relevant decisions by the Puerto Rico Supreme Court. *See Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 18 (1st Cir.2000).

█ Article 1868 provides that actions to demand civil liability for "obligations arising from the fault or negligence mentioned in section 5141 [Article 1802 of the Civil Code] of this title" prescribe in one (1) year "from the time the aggrieved person had knowledge thereof." The requisite knowledge has been held by the Puerto Rico Supreme Court to include knowledge of the injury and the identity of the person who caused it. *Colon–Prieto v. Geigel*, 115 D.P.R. 232, 244 (1984); *Vera Morales v. Bravo Colon*, 2004 WL 540534, 2004 TSPR 30 (P.R. Feb. 27, 2004). As such, it has been held that the one year prescriptive period for filing actions for damages under Article 1802 accrues from the moment the aggrieved knew of the injury and could have exercised his right of action. *Id., see also Montanez v. Hosp. Metropolitano*, 2002 WL 1270189, 2002 TSPR 70 (P.R. May 24, 2002); *Padin Espinosa v. Compania de Fomento Industrial de P.R.*, 150 D.P.R. 403, 2000 WL 263363, *3 (2000). As the First Circuit has stated, "the one-year period starts to run not at the time of the injury, but upon the discovery by the injured party of the injury and of its author." *Gonzalez–Perez v. Hosp. Interamericano*, 355 F.3d 1, 2 (1st Cir.2004).

█ The intended effect of this interpretation is benign to plaintiffs; their claim will not be time-barred simply because one year has passed from the time of injury if at that time they were not aware of all of the elements necessary to exercise their right. *See Id.* at 4–5; *Montanez,*

*supra.* However, it is not necessary, nor will it stop the statute of limitations from running, for a plaintiff to know the full impact and all the possible consequences of the injury. *Vera Morales, supra.* Therefore, when a claim under Article 1802 is filed more than one year after the injury was caused, the plaintiff bears the burden of proving the timeliness of his claim and his lack of the necessary knowledge to assert the claim within the statutory period. *Kaiser v. Armstrong World Industries, Inc.,* 872 F.2d 512, 516 (1st Cir.1989) (citations omitted); *Torres,* 219 F.3d at 19 (citations omitted); *Corey Lanuza v. Medic Emergency Specialties, Inc.,* 229 F.Supp.2d 92, 99 (D.P.R.2002).

Co-defendants argue that since the instant action was filed on May 26, 2004, more than two (2) years after Mr. Guzmán–Torres' death on February 16, 2002, Plaintiff's claims under the Puerto Rico tort statute are barred by the applicable one-year statute of limitations. Co-defendants contend that already by February 16, 2002 Plaintiff knew of his injury, the death of his father, and who could have caused it, the State Insurance Fund Industrial Hospital, and that suit should have been filed a year thereafter, to the latest. Plaintiff counters that he did not learn that his father's death was a result of medical malpractice until October 20, 2003, when he reviewed the Intensive Care Unit notes furnished by the hospital. Therefore, he contends, that it was not until then that the statute of limitations began to accrue. Much has been said about Plaintiff's mother's alleged requests for her husbands' medical file and the hospital's compliance (or lack thereof) with said requests. However, our decision today, makes this issue moot, at least for summary judgment stage. Regardless of whether Plaintiff's mother did not request a copy of the full medical file or whether the Industrial Hospital unreasonably retained the medical record past the one-year term, we hold

that the statute of limitations did not begin to accrue until Plaintiff learned that his father's death could have been caused by the hospital's and attending physicians' negligence. Let's see.

The pertinent undisputed facts are as follows: (1) on February 4, 2002, Mr. Guzmán–Torres suffered a work-related accident for which he was taken to the Industrial Hospital; (2) Mr. Guzmán–Torres presented blunt trauma to his abdomen, spleen laceration, and bilateral tibial fractures (with an open wound); (3) he underwent a splenectomy and exploratory laparotomy; (4) the nurse at the Industrial Hospital represented to Plaintiff's family that upon arrival at the Emergency Ward, the open wound on their father's legs was cleaned before being bandaged (Docket # 55, Ex. 2); (5) Mr. Guzmán–Torres passed away on February 16, 2002; (6) his Death Certificate, dated March 27, 2002, states that the cause of death was sepsis as a complication of severe corporal trauma (Docket # 82, Ex. B); (7) on July 9, 2002 and October 6, 2003, Plaintiff's mother requested certain portions of her husband's medical file (e.g. nurses' and intensive care unit notes) which were furnished on October 1, 2002 and October 20, 2003, respectively (Docket # 82, Ex. A); and (8) it was not until the year 2004 that Mr. Guzmán–Torres' entire medical file was requested for the first time (Docket # 82, Ex. A).

The issue is then whether Plaintiff knew, or had reason to know, before May 26, 2003 (one year prior to the filing of this complaint) that he had a possible cause of action for medical malpractice against Co-defendants. Our answer: not necessarily. There is no question that Plaintiff's father suffered a terrible accident at work which rendered him in grave condition. He underwent an operation and was held at the intensive care unit. It follows that a rea-

sonable person could expect Mr. Guzmán–Torres to die as a result of said accident. That is, without reaching the merits of Plaintiff's malpractice claim, the death of Mr. Guzmán–Torres was a foreseeable consequence of the accident. Furthermore, Plaintiff has averred, and Co-defendants have not disputed, that a nurse at the hospital informed his family that his father's legs had been cleaned prior to being bandaged. For all practical purposes, when Plaintiff's father died the family could have easily attributed his death to the injuries suffered as a result of the accident. There is simply no evidence that, at that point, Plaintiff had reason to suspect negligence on the part of the hospital and the attending physicians.

Then there is the issue of the Death Certificate issued on March 27, 2002. Assuming that Plaintiff had knowledge of the content of the certificate, that his father died of "sepsis as a complication of severe corporal trauma," we see no reason to automatically conclude that Plaintiff would know, or had reason to suspect, that this sepsis was a result of negligence and not of "a complication of severe corporal trauma." We do not know whether it is common or rare for sepsis to be caused by an infection of an unattended wound, or whether it may be caused by some other reason, negligent or not. What we do know is that the certificate reveals nothing about the medical treatment received by Plaintiff's father and that given his grave condition upon arrival at the hospital it was not unreasonable for Plaintiff to believe that the sepsis could be the result of an unfortunate infection acquired as a result of the accident, and not the by-product of negligent medical care.

Next, we have the requests for portions of the medical file made by Plaintiff's mother. There are no allegations that the documents provided to Plaintiff's mother on October 1, 2002 had any information that should have alerted Plaintiff of his possible claim against Defendants. Thus, this leaves us with the documents furnished on October 20, 2003. Plaintiff avers that it was upon reviewing these documents that he first became aware that his father's death could have been caused by Defendants' negligence in his treatment. Although we do not know the content of said documents, there is nothing in the record to suggest that prior to this time Plaintiff had any indicia of the causal link between his father's death and negligence. There is simply no evidence of knowledge that Plaintiff's father's death "could be considered a tort rather than an expected side effect." *Espada v. Lugo*, 312 F.3d 1, 3–5 (1st Cir.2002) (requiring knowledge of a causal nexus between the injury and the negligence or who caused it in order for a person to be deemed on notice of her cause of action); *see e.g.*, *Kaiser*, 872 F.2d at 517–18 (holding that when an aggrieved person knows of a causal link, or is aware of the likelihood of the relation, between his injury/disability and the asserted negligence the one-year statute of limitations begins to accrue); *Galarza v. Zagury*, 739 F.2d 20, 23–24 (1st Cir.1984) (requiring causal knowledge before the prescriptive period begins to run); *Villarini–Garcia*, 8 F.3d at 86 (evidence that information about the direct link between the constant pain suffered by plaintiff and a prior operation was not available to plaintiff but after three years of the operation is enough to create an issue of fact preventing the entry of summary judgment); *Rivera–Encarnacion v. Estado Libre Asociado*, 1982 WL 210553, 113 D.P.R. 383, 386 (P.R. Oct. 22, 1982) (after the exercise of some diligence without attaining the requisite knowledge of some connection between the injury and the negligent act, summary judgment is unwarranted). Under these circumstances, it is clear that Plaintiff did not know, nor had any reason to know, that his

father's death could have been the result of negligent medical treatment. Moreover, since, as discussed above, Plaintiff had no reason to suspect medical malpractice in the treatment of his father, it would be unreasonable to require of him specific diligent acts geared at discovering a negligence he had no reason to believe had taken place. Consequently, Co-defendants' motion for summary judgement will be **DENIED**.

## 2. Immunity

Co-defendant Hernández–Claudio has filed a request for summary judgment on Plaintiff's claims against him arguing that he is entitled to immunity from suit pursuant to 26 P.R. Laws Ann § 4105 for being a Commonwealth employee.[4] Both Plaintiff and the other Co-defendants have vehemently opposed said request. For the reasons stated below, we find that Co-defendant Hernández–Claudio was at all times an independent contractor of the State Insurance Fund and thus not immune from civil liability in this case.

 When a physician is deemed a Commonwealth employee under 26 P.R. Laws Ann § 4105 he is entitled to immunity from civil suit. If he is deemed an independent contractor, however, he is not immune. *See Flores–Román v. Ramos* 90 J.T.S. 132 at 609–11. Per the First Circuit's opinion in *Nieves v. Univ. of Puerto Rico*, 7 F.3d 270 (1st Cir.1993), the following are factors to consider in making a determination as to whether a physician working for the Commonwealth or its instrumentalities is immune from suit or not: (1) the physician is compensated on a per-patient basis; (2) he/she receives fringe benefits of the type given to employees (e.g. vacation and sick leaves, pension plan benefits and/or tax withholding); (3) personally owes medical equipment and supplies and/or hires and supervises his/her own administrative or medical employees; (4) holds and pays for his/her own medical malpractice insurance policy; (5) exercises final judgment as to the appropriate medical treatment given to his patients. *Id.* at 279.

Co-defendant Hernández–Claudio alleges that he should be considered an employee of the State Insurance Fund because: he had no discretion over which patients to treat (patients were assigned to him), his work and vacation schedules were subject to authorization and approval by the State Insurance Fund, and he did not own his medical equipment, materials, nor paid for medical support staff (Docket # 88 at p. 7). The evidence, however, provides no support for Co-defendant Hernández–Claudio's assertions.

 Co-defendant Hernández–Claudio's contract for medical services with the State Insurance Fund states in various places and in no uncertain terms that Co-defendant Hernández–Claudio provides professional services to the State Insurance Fund. *See* Docket # 100. Also, there is no dispute that Co-defendant Hernández–Claudio pays for his own insurance policy (agreed to hold the State Insurance Fund harmless from suit); does not receive fringe benefits such as vacation and sick leaves, pension benefits or Christmas bonuses from the State Insurance Fund; is paid on a per-patient basis; and makes his own diagnosis of patients, recommendations for hospitalization, treatment and discharge. *See* Dockets # 99, 100 & 113.

---

4. Section 4105 provides that "[n]o health service professional may be included as a defendant in a civil suit for damages due to malpractice caused in the performance of his/her profession while said health service professional acts in compliance with his duties and functions as an employee of the Commonwealth of Puerto Rico, its dependencies, instrumentalities and municipalities." 26 P.R. Laws Ann. § 4105.

Per the agreement, the State Insurance Fund makes tax withholdings of 7%, consistent with the payments made to independent contractors, and Co-defendant Hernández–Claudio has agreed to be responsible for the payment of his income taxes and social security. Moreover, the State Insurance Fund has retained the right to amend or resolve the contract with prior notice *See* Docket # 100. The foregoing factors alone are sufficient for a finding of independent contractor; *See Flores–Román,* at 609–11, more so, when considering that Co-defendant Hernández–Claudio testified under oath that he works with the State Insurance Fund as an independent contractor (Docket # 104, Ex. 1)[5]. Therefore, even crediting Co-defendant Hernández–Claudio's allegations that he had no control or discretion over which patients he treated, that he had to ask for permission prior to taking vacation days off, and that he did not use his own medical equipment, would not be enough to overcome the determination that Co-defendant Hernández–Claudio is an independent contractor. As explained above, Co-defendant Hernández–Claudio's conditions of employment (e.g. insurance payment, control over medical decisions, lack of fringe benefits, etc) tip the balance of the *Nieves'* factors in favor of a determination that he is, indeed, an independent contractor of the State Insurance Fund. *See Nieves,* 7 F.3d at 280. Accordingly, Co-defendant Hernández–Claudio's motion for summary judgment is **DENIED.**

### Conclusion

For all the reasons discussed above, Co-defendants' motions for summary judgment are **DENIED. The parties are ORDERED to file their Joint Pretrial Memorandum by March 31, 2006. A**

5. The Court notes that the exhibit in Docket # 104 was submitted in Spanish and no translation has been furnished to the Court.

Pretrial and Settlement Conference will be set for April 26, 2006 at 4:00 p.m.

**SO ORDERED.**

Therefore, Plaintiff is hereby **ORDERED** to file the English translation of this exhibit by **March 10, 2006.**