Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ANA DÍAZ MIRANDA | | |
|---|---|---|
| Apelada | KLAN202400013 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón |
| v. | | |
| AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS | | Caso Núm. BY2020CV01392 |
| Apelante | | Sobre: Daños y Otros |

Panel integrado por su presidente el Juez Bermúdez Torres, la Jueza Grana Martínez y el Juez Adames Soto

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de mayo de 2024.

I.

El 13 de marzo de 2020, la Sra. Ana Díaz Miranda instó *Demanda* sobre daños y perjuicios contra la Autoridad de Acueductos y Alcantarillados (AAA). Alegó ser abonada del servicio en una propiedad sita en el municipio de Corozal, con número de cuenta -11567223- registrado en la AAA. Arguyó que, con relación a dicha propiedad, el 20 de agosto de 2015, recibió una comunicación en la que le imputaban haber manipulado el contador de agua. Le reclamaron el pago de una multa ascendente a $7,200.08 por fraude. La señora Díaz Miranda basó su causa de acción en que la AAA no le brindó la oportunidad de defenderse de las imputaciones de fraude ni impugnar las multas en un procedimiento administrativo, causándole daños morales y angustias mentales.

Tras varias incidencias procesales, entre ellas, una pausa judicial para permitir que se siguiera y culminara el correspondiente cause

Número Identificador

SEN2024_____

administrativo[1], el 17 de octubre de 2023 se celebró el juicio en su fondo. El 31 de octubre de 2023, notificada el 2 de noviembre de 2023, el Tribunal de Primera Instancia emitió *Sentencia* declarando "Con Lugar" la *Demanda.* Consecuentemente, le impuso el pago de $30,000.00 a la AAA por concepto de daños a favor de la señora Díaz Miranda.

Inconforme, el 13 de noviembre de 2023, la AAA interpuso *Moción en Solicitud de Determinaciones de Hecho Adicionales y de Reconsideración.* Por su parte, el 11 de diciembre de 2023, la señora Díaz Miranda presentó *Moción en Oposición a Reconsideración.* El 11 de diciembre de 2023, notificada el 12, el Foro primario emitió *Resolución* declarando "Sin Lugar" la *Moción.* De dicho dictamen, el 4 de enero de 2024, la AAA interpuso la *Apelación* de epígrafe. Sostiene que el Foro *a quo* cometió los siguientes errores:

**Primer error:**

EL TRIBUNAL DE PRIMERA INSTANCIA (TPI) INCURRIÓ EN ERROR MANIFIESTO Y DE FORMA ARBITRARIA, AL FORMULAR DETERMINACIONES DE HECHOS SIN QUE LAS MISMAS ESTUVIERAN SUSTENTADAS POR LA PRUEBA O EN CONTRADICCIÓN A LA PRUEBA DOCUMENTAL ESTIPULADA POR LAS PARTES, QUE LLEVARON A CONCLUSIONES DE DERECHO EQUIVOCADAS QUE DESEMBOCARON EN UNA SENTENCIA ERRÓNEA.

---

[1] El 14 de julio de 2020, la AAA solicitó la desestimación de la *Demanda.* En la *Moción de Desestimación* alegó haber recibido copia de la *Demanda* el 29 de junio de 2020 y que, el 6 de marzo de 2020, le habían informado a la señora Díaz Miranda que procedía un reajuste a los cargos imputados originalmente. Le apercibieron nuevamente sobre su derecho a solicitar una vista administrativa. En tal sentido, la AAA planteó que el proceso que la señora Díaz Miranda podía proseguir para cuestionar la determinación de la AAA era ante el ente administrativo y no, en los tribunales. Mediante *Oposición a Moción de Desestimación* la señora Díaz Miranda argumentó que no fue hasta que se interpuso la *Demanda,* que la AAA accedió a celebrar una vista administrativa y, además, que la acción por daños es jurisdicción exclusiva del tribunal. En una *vista* celebrada el 17 de mayo de 2021, el Foro primario recomendó a la señora Díaz Miranda que culminara el procedimiento administrativo y que, luego de dilucidarse la controversia ante la Agencia, de haber daños y perjuicios, se continuaría el procedimiento judicial. Luego, el 22 de enero de 2022, mediante *Moción Informativa y en Solicitud de Desestimación,* la AAA notificó que, el Foro administrativo había resuelto la controversia desestimando todos los cargos, por lo cual, la señora Díaz Miranda ya no era acreedora de remedio alguno por parte del tribunal. El 1 de marzo de 2022, la señora Díaz Miranda se opuso y planteó, que, según lo acordado en la vista del 17 de mayo de 2022, tras culminar la controversia ante la Agencia, el reclamo de daños y perjuicios se dilucidaría en tribunal. El 2 de marzo de 2022, notificada el 3, el Foro primario emitió *Orden* declarando "Sin Lugar" la solicitud de la AAA. De dicha determinación, la AAA acudió ante nuestra consideración. Evaluado su *Recurso,* el 22 de junio de 2022, emitimos *Resolución* denegando su expedición.

**Segundo error:**

ERRÓ EL TPI AL ASIGNAR UNA CUANTÍA POR ALEGADOS DAÑOS DE FORMA EXAGERADA, SIN ESTABLECER RELACIÓN CAUSAL, SIN CÓMPUTOS Y SIN ADJUDICAR RESPONSABILIDAD A LA PARTE DEMANDANTE.

**Tercer error:**

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR CONCEDER DAÑOS POR LA AAA HABERSE TARDADO EN EFECTUAR LA VISTA ADMINISTRATIVA.

**Cuarto error:**

ERRÓ EL TPI AL NO DETERMINAR QUE LA RECLAMACIÓN ESTABA PRESCRITA.

En la misma fecha, la AAA instó *Moción Solicitando Autorización para Presentar la Transcripción de la Prueba Oral.* El 11 de enero de 2024 concedimos término de treinta (30) días a la señora Díaz Miranda para presentar su alegato en oposición. El 24 de enero de 2024, la AAA compareció mediante *Moción Presentando la Transcripción de la Prueba Oral.* El 4 de marzo de 2024 compareció la señora Díaz Miranda con su *Alegato de la Parte Apelada Ana Díaz Miranda.*

Con el beneficio de la comparecencia de las partes, la transcripción de la vista, del Derecho y jurisprudencia aplicable, procedemos a resolver.

II.

Los primeros tres señalamientos de error inciden en la primordial función del Tribunal de Primera Instancia de apreciar y adjudicar la prueba ante sí, y de ella, determinar los hechos adjudicativos. Por ello, los atenderemos en conjunto.

En su sustrato, la AAA cuestiona la formulación de determinaciones de hechos y, por consiguiente, las conclusiones de derecho que produjeron la *Sentencia* que impugna. Incluye en su cuestionamiento, la cuantía concedida por daños y que la razón para dar paso a la causa de acción fuese la tardanza en efectuar la vista administrativa. Veamos.

A.

Según el Art. 1802 del derogado Código Civil,[2] "el que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado". Es principio fundamental de la doctrina general de daños y perjuicios, que, "todo perjuicio, material o moral, da lugar a reparación si concurren tres requisitos o elementos: (1) tiene que haber un **daño real**; (2) debe existir nexo causal entre **el daño y la acción u omisión de otra persona**, y (3) **el acto u omisión tiene que ser culposo o negligente**".[3] De no existir alguno de estos elementos, no habrá causa de acción y, por tanto, será innecesaria la identificación y valoración de daños.

Ahora bien, declarada con lugar la demanda, es decir, la existencia de una acción u omisión llevada a cabo mediante culpa o negligencia que, relacionadas entre sí, causó un daño, sólo resta valorizar los mismos y compensar al perjudicado. La responsabilidad civil intenta reparar un perjuicio ocasionado, el cual tiene que ser demostrado por el perjudicado, probando **la realidad del daño inferido y su valor**.[4] Determinada la existencia de una actuación antijurídica e ilegal, lo que procede es la valoración de los daños.

Nuestro Tribunal Supremo ha señalado que "corresponde al juzgador, en su **sano juicio, experiencia y discreción**, la valoración justa y necesaria para compensar los daños y perjuicios sufridos".[5] Ciertamente dicha gestión es una tarea difícil, "debido al cierto grado de especulación en la determinación de éstos y por incluir, a su vez, elementos subjetivos tales como la discreción y el sentido de justicia y

---

[2] 31 LPRA § 5141. Esta disposición, aunque fue derogada por la Ley 55-2020, era la disposición vigente al momento de los hechos que originan la reclamación del presente caso.

[3] *López* v. *Porrata Doria*, 169 DPR 135, 150 (2006); *Bonilla* v. *Chardón*, 118 DPR 599, 610 (1987). Énfasis nuestro.

[4] *López,* 169 DPR a la pág. 157, citando a J. Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Ed. Bosch, 1983, T.2, Vol. 3, pág. 92 (1983). Énfasis nuestro.

[5] *Sagardía De Jesús* v. *Hospital Auxilio Mutuo*, 177 DPR 484, 509 (2009); *S.L.G. Rodríguez* v. *Nationwide*, 156 DP.R. 614, 623 (2002); *Concepción Guzmán* v. *A.F.F.*, 92 DPR 488, 502 (1965). Énfasis nuestro.

conciencia humana del juzgador de los hechos".[6] Se complicaría más por tratarse de daños morales, cuya determinación no es mecánica, toda vez que conlleva un mayor esfuerzo para conceder valor monetario a intereses personales que no son parte del patrimonio.[7]

B.

Recordamos, que, el estándar probatorio en los casos civiles es preponderancia de la prueba. Por la gran dificultad que implica poder determinar un hecho con certeza o exactitud matemática, la ley y la jurisprudencia solo requieren que los casos se prueben por preponderancia de la prueba, que es tanto como establecer como hechos probados aquellos que con mayores probabilidades ocurrieron.[8]

La prueba no puede consistir en meras alegaciones o teorías, debiendo ser evidencia real que sustente las alegaciones.[9] El inciso (d) de la Regla 110 de Evidencia,[10] establece que "[l]a evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley." De merecerle entero crédito al juzgador, la declaración de un solo testigo es suficiente para probar un hecho.

En la dimensión apelativa, el estándar de revisión aplicable a las determinaciones de hechos de los tribunales de primera instancia es el de error manifiesto. La Regla 42.2 de Procedimiento Civil[11] expresamente dispone que las determinaciones de hechos de los tribunales de instancia basadas en testimonio oral, no se dejarán sin efecto a menos que sean claramente erróneas y que se debe dar consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos.[12] Esta deferencia hacia el Foro primario responde al hecho de

---

[6] *S.L.G. Rodríguez,* 156 DPR a la pág. 622. Véase, además, *Urrutia* v. *A.A.A.*, 103 DPR 643, 647 (1975).
[7] *Sagardía,* 177 DPR a la pág.509
[8] *Pagán et al.* v. *First Hospital,* 189 DPR 509, 519 nota 4 (2013); *Zambrana* v. *Hospital Santo Asilo de Damas,* 109 DPR 517, 521 (1980).
[9] *UPR Aguadilla* v. *Lorenzo Hernández,* 184 DPR 1001, 1013 (2012).
[10] 32 LPRA Ap. VI, R. 110 (d)
[11] 32 LPRA Ap. V, R. 42.2.
[12] *Dávila Nieves* v. *Meléndez Marín,* 187 DPR 750, 770-771 (2013).

que el juez sentenciador es el que tiene la oportunidad de recibir y apreciar toda la prueba oral presentada, de escuchar la declaración de los testigos y evaluar su *demeanor* y confiabilidad.[13]

Como Foro apelativo, podemos intervenir con la apreciación de la prueba oral que haga el Tribunal de Primera Instancia, cuando dicho Foro primario actúe con pasión, prejuicio o parcialidad, o incurra en un error manifiesto al aquilatarla.[14] Además, se podrá intervenir cuando la apreciación de la prueba no represente el balance más racional, justiciero y jurídico de la totalidad de la prueba[15] y cuando la apreciación de la misma se distancia "de la realidad fáctica o esta [es] inherentemente imposible o increíble."[16]

III.

Tras aquilatar la prueba documental y adjudicar credibilidad a los testigos, el Tribunal de Primera Instancia emitió las siguientes determinaciones de hechos:

1. La parte demandante Ana Díaz Miranda, es doctora en psicología, casada, y abonada de la demandada Autoridad de Acueductos y Alcantarillados (en adelante AAA).

2. La parte demandada Autoridad de Acueductos y Alcantarillados (AAA), es una corporación pública con plena capacidad de demandar y ser demandada, creada por legislación para brindar, entre otras cosas, servicios de agua potable y alcantarillados a los residentes de Puerto Rico.

3. La demandante Ana Díaz Miranda es abonada de la AAA relacionada a una propiedad que tiene una dirección postal de HC 01 Box 4865 en Corozal, PR y número de cuenta de la AAA 11567223.

4. Su residencia principal por los pasados años ha sido en Bayamón.

5. El pasado 20 de agosto de 2015 luego de solicitar la conexión de servicio de agua en la residencia de Corozal,

---

[13] *Suárez Cáceres* v. *Com. Estatal Elecciones*, 176 DPR 31, 67 (2009); *López* v. *Dr. Cañizares*, 163 DPR 119, 135 (2004); *González Hernández* v. *González Hernández*, 181 DPR 746, 776-777 (2011).
[14] *González Hernández,* 181 DPR a la pág. 777; *Rivera Figueroa* v. *The Fuller Brush Co.,* 180 DPR 894, 916 (2011); *Meléndez* v. *Caribbean Intl. News,* 151 DPR 649, 664 (2000).
[15] *Dávila Nieves,* 187 DPR a la pág. 772.
[16] *Pueblo* v. *Toro Martínez,* 200 DPR 834, 859 (2018); *Pueblo* v. *Santiago et al.,* 176 DPR 133, 148 (2009).

la demandante recibió una comunicación escrita de parte de la demandada AAA en la que se alegaba que había hurtado o manipulado el contador de agua de la referida cuenta. Se informó que por este alegado fraude le debía a la AAA la cantidad de $7,200.08.

6. La carta de 20 de agosto de 2015 le apercibía la demandante que tenía diez (10) días calendarios para solicitar revisión de esta multa. No se le conectó el servicio de agua.

7. Dos días después de recibida el 22 de agosto de 2015 la demandante cursó una carta a la demandada AAA por correo certificado con acuse de recibo. Solicitó la celebración de un proceso que cumpliese con el debido proceso de ley para defenderse de la multa y la imputación de hurto o fraude.

8. La parte demandada AAA continuó enviando cartas de cobro a la demandante, incluyendo otra misiva de fecha 1 de abril de 2016, recibida por la demandante a mediados del mes, volviendo a imputar fraude a la demandante y requiriendo el pago de $7,200.00. Esta segunda carta otorgó diez (10) días laborables para pedirla vista.

9. La parte demandante entonces procedió a contestar la segunda carta por correo certificado el 29 de abril de 2016. Le recordó a la demandada que habían pasado más de ocho (8) meses desde que pidió refutar las imputaciones de fraude y las multas.

10. Esta segunda carta pidiendo oportunidad de refutar las imputaciones de fraude y la multa no fue contestada por la corporación pública tampoco.

11. Por espacio de aproximadamente seis (6) años, la demandada AAA nunca le brindó la oportunidad de defenderse de las imputaciones de fraude y las multas. La demandante tampoco recibió respuesta a sus cartas.

12. Al día de la radicación de la demanda, el 13 de marzo de 2020, la demandante no había podido refutar las imputaciones de fraude y las multas en un proceso administrativo ante la AAA. Por lo anterior, se le causó daños morales y angustias mentales a la demandante al imputársele acciones posiblemente delictivas y pretendiendo cobrarle multas, por un periodo de tiempo excesivo sin que se le diese la oportunidad alguna para levantar lo incorrecto de lo alegado.

13. Luego de que la demandada AAA recibió una carta de aviso de demanda, el 12 de febrero de 2020, por parte del representante legal de la Sra. Díaz Miranda, fue que la corporación pública se percató de que pretendía cobrar más de $2,500.00 a la demandante desde el año 2015 por un servicio de alcantarillado que no existía, ni se proveía.

Dicho cargo se le eliminó. No obstante, seguían pretendiendo cobrar las multas e imputando fraude en hurto de agua.

14. Después del recibo de la carta de aviso de demanda y la posterior radicación de la misma en autos, la demandada AAA entonces citó a la demandante a una vista administrativa. Celebrada la vista administrativa en las facilidades de la corporación pública, el Oficial Examinador de la agencia declaró CON LUGAR el recurso de apelación el 7 de septiembre de 2021 y ordenó la eliminación de la alegada deuda, la multa y los cargos por hurto de agua.

15. Celebrado el juicio en el Tribunal, la demandante Ana Díaz Miranda testificó haber sufrido daños por angustias mentales a causa de las imputaciones de multa y hurto en su contra, por los años de incumplimiento de la AAA con el debido proceso de ley, y al no poder conectar el servicio de agua en la residencia en Corozal.

16. La testigo de la parte demandada AAA, Rosa Méndez González, se limitó a explicar el proceso administrativo de la corporación pública cuando se imputa una deuda al abonado. No ofreció testimonio sobre el caso de la demandante en particular.

Examinadas las anteriores determinaciones de hechos a través del estándar de revisión correspondiente, no encontramos que el Foro *a quo* haya incurrido en error manifiesto al evaluar la prueba y adjudicar credibilidad. Más importante aún, la prueba vertida conforma a cabalidad la causa de acción dimanante del Art. 1802 del Código Civil de Puerto Rico.

La negligencia consistió en que, luego de que la señora Díaz Miranda solicitara la conexión de servicio de agua en su residencia, la AAA le imputó fraude por manipular el contador de agua para hurtar el servicio. Ante ello, el 22 de agosto de 2015, la señora Díaz Miranda le cursó una carta a la AAA por correo certificado en la que solicitó la celebración de un proceso que cumpliese con su debido proceso de ley. La AAA no respondió el pedido de la señora Díaz Miranda y continuó remitiéndole cartas de cobro de dinero, incluyendo otra misiva del 1 de abril de 2016, imputándole fraude y dándole diez (10) días para que solicitara una vista. El 29 de abril de 2016, la señora Díaz Miranda

replicó e informó que habían transcurrido ocho (8) meses desde que pidió que se le concediera una vista para refutar las imputaciones de fraude e impugnar la multa, sin que se le concediera la misma.

Transcurridos aproximadamente seis (6) años, sin que la AAA le brindara la oportunidad de defenderse de las imputaciones de fraude y las multas en un procedimiento administrativo, no fue hasta que la señora Díaz Miranda incoó la *Demanda* por daños morales y angustias mentales ocasionados a raíz de la imputación del delito de fraude y que se le negase aclarar la situación y defenderse de tan seria acusación, que la AAA citó a una vista administrativa. Aunque el resultado produjo la exoneración de la señora Díaz Miranda de toda conducta de fraude y, por consiguiente, la eliminación de la alegada deuda, la multa y los cargos por hurto de agua, ello no eliminó los daños que evidentemente le causó a la señora Díaz Miranda la conducta negligente de la AAA. Así lo declaró la señora Díaz Miranda a satisfacción del Tribunal de Primera Instancia.

Tampoco erró el Tribunal de Primera Instancia en la valoración que hizo de los daños. Tratándose de daños reales concretos y no especulativos, la valoración de $30,000.00 que hizo el juzgador nos parecen más que razonable.

IV.

En su cuarto señalamiento de error, la AAA indica que el Tribunal de Primera Instancia debió desestimar la *Demanda* por estar prescrita la causa de acción. No le asiste la razón. Elaboremos.

Ciertamente, las acciones para exigir el resarcimiento del daño sufrido como consecuencia de la culpa o negligencia de un tercero poseen una vida limitada y se extingue una vez transcurrido el plazo estatuido sin que se interrumpa eficazmente.[17] El propósito de la prescripción es fomentar el pronto reclamo de los derechos a la vez que

---

[17] *Rivera Prudencio* v. *Mun. de San Juan,* 170 DPR 149, 167 (2007).

se protege al obligado de la eterna pendencia de un reclamo en su contra.[18]

Según el entonces vigente Art. 1868 del Código Civil de Puerto Rico,[19] las acciones que surgen por las obligaciones derivadas de la culpa o la negligencia del que se trata en el Art. 1802, prescriben por el transcurso de un (1) año. Este periodo de prescripción puede interrumpirse, conforme dispone el Art. 1873 del mismo Código, "...por: (1) su ejercicio ante los tribunales, (2) una reclamación extrajudicial del acreedor y (3) cualquier acto de reconocimiento de la deuda por el deudor".[20]

La prescripción constituye un derecho sustantivo y acarrea la desestimación de cualquier demanda presentada fuera del término previsto para ello.[21] El Art. 1869 del Código Civil dispone que el tiempo para la prescripción de toda clase de acciones se contará desde el día en que pudieron ejercitarse.[22] El que sufre un daño no debe esperar que este se desarrolle y se agrave, ya que la prescripción corre desde que se adviene en conocimiento del daño y su autor, aunque se desconozca su cuantía o magnitud.[23]

En este caso, si bien los hechos que conforman la causa de acción se originaron en el año 2015, y que, desde la última carta suscrita por la señora Díaz Miranda pidiendo audiencia administrativa transcurrieron aproximadamente cuatro (4) años hasta la fecha de radicación de la *Demanda*, lo cierto es que la conducta torticera de la AAA continuó por un largo periodo de tiempo, ocasionando constantes daños y sufrimientos a la señora Díaz Miranda. No fue hasta que se presentó la *Demanda*, que la AAA se percató del cobro de una deuda por un servicio que no había ofrecido. Aun así, la Corporación pública continuó cobrando las multas improcedentes e imputándole fraude en hurto de

---

[18] Íd.
[19] 31 LPRA § 5298. Derogada por Ley 55-2020.
[20] 31 LPRA § 5303. Derogada por Ley 55-2020.
[21] Íd.
[22] 31 LPRA § 5299. Derogada por Ley 55-2020.
[23] *Ortiz* v. *Municipio de Orocovis,* 113 DPR 484 (1982).

agua. En justicia, no erró el Foro sentenciador al no desestimar la *Demanda* por prescripción.

V.

Por los fundamentos que anteceden, *confirmamos* el dictamen emitido por el Tribunal de Primera Instancia.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.  El juez Adames Soto emite por escrito Voto Disidente.


                              Lcda.  Lilia M. Oquendo Solís
                         Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial

| | | |
|---|---|---|
| ANA DÍAZ MIRANDA<br>Apelada<br><br>v.<br><br>AUTORIDAD DE ACUEDUCTOS<br>Y ALCANTARILLADOS<br>Apelante | KLAN202400013 | *Certiorari*<br>procedente del<br>Tribunal de<br>Primera Instancia,<br>Sala de Bayamón<br><br>Caso Núm.<br>BY2020CV01392<br><br>Sobre:<br>Daños y Otros |

Panel integrado por su presidente el Juez Bermúdez Torres, la Jueza Grana Martínez y el Juez Adames Soto

### **VOTO DISIDENTE DEL JUEZ NERY E. ADAMES SOTO**

Según se recoge en la sentencia que suscriben mis respetados compañeros jueces de Panel, la Autoridad de Acueductos y Alcantarillados (AAA) solicitó la revocación de una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI). Mediante el referido dictamen, el foro primario declaró con lugar la *Demanda* presentada por la señora Ana Díaz Miranda (señora Díaz Miranda) y le impuso el pago de $30,000.00 a la AAA en concepto de daños. Como fundamento, la AAA esgrime ante nosotros que, la señora Díaz Miranda nunca radicó un recurso de *mandamus* para obligar a la AAA a que se le concediera una vista administrativa dentro de los términos establecidos. Además, argumenta que, conforme a lo dispuesto por el Tribunal Supremo en *Santiago Montañez v. Fresenius Medical,* 195 DPR 476, 493 (2016), el TPI debió establecer en su *Sentencia* la metodología o los casos utilizados como referencia para establecer la cuantía en concepto de daños. Juzgo que tiene razón y por ello hubiese revocado la determinación del foro primario.

La señora Díaz Miranda sostuvo en su demanda que, el 20 de agosto de 2015, recibió la primera comunicación de la AAA imputándole haber utilizado el servicio de agua potable sin que mediara un servicio debidamente registrado con la AAA, por lo cual, se le impuso una multa. A raíz de lo anterior, manifestó que el 24 de agosto de 2015, le envió una carta a la AAA solicitando la revisión de los cargos imputados. No obstante, la señora Díaz Miranda no recibió respuesta a su solicitud. Así las cosas, el 1 de abril de 2016, la AAA emitió otra comunicación reafirmando los cargos impuestos. En respuesta, el 29 de abril de 2016, la señora Díaz Miranda solicitó la celebración de una vista administrativa. Empero, la señora Díaz Miranda tampoco recibió respuesta a la solicitud de vista administrativa.

Transcurridos alrededor de cuatro años, el 6 de marzo de 2020, la AAA cursó otra comunicación en donde reafirmó los cargos impuestos, aunque, eliminó los cargos por alcantarillado. Además, la AAA le informó nuevamente a la señora Díaz Mirando su derecho a solicitar vista administrativa.

En vista de lo anterior, la señora Díaz Miranda argumentó en su demanda que la AAA no le brindó la oportunidad de defenderse de las imputaciones de fraude ni de impugnar la multa en un procedimiento administrativo, causándole daños morales y angustias mentales.

Como es sabido, el remedio que el Tribunal Supremo ha identificado que tiene una parte por la dilación excesiva de una agencia en adjudicar un asunto es acudir ante el Tribunal mediante un recurso de *mandamus* para requerir que la agencia actúe con diligencia. *J. Exam, Tec. Med. v. Elías et al.,* 144 DPR 483, 495 (1997). De conformidad, la señora Díaz Miranda no podía preterir el remedio disponible para solicitarle a la AAA que actuara con diligencia y celebrara una vista para dilucidar el asunto, para luego presentar una causa de acción solicitando remedio en daños por la demora de la AAA. La señora Díaz Miranda

nunca presentó el recurso de *mandamus,* por lo cual, no podía solicitar remedio por daños.

Por otra parte, me resulta muy claro que, al hacer la determinación sobre los daños a ser compensados, el TPI incumplió con el precedente establecido en *Santiago Montañez v. Fresenius Medical,* supra en la pág. 493. Como se sabe, en dicha Opinión el Tribunal Supremo advirtió a los jueces *la importancia de detallar en sus dictámenes los casos que se utilicen como referencia o punto de partida para la estimación y valoración de daños y el cómputo realizado para establecer las cuantías que se concedan.* El alto Foro indicó, además, que, *[h]abida cuenta de que esa tarea lleva consigo cierto grado de especulación, es* **forzoso** *explicar qué casos se utilizan como referencia y cómo las cuantías concedidas se ajustan en esos casos anteriores al caso que el tribunal tiene ante su consideración. Íd.* (Énfasis provisto).

En definitiva, la *Sentencia* emitida por el TPI le impuso a la AAA la cantidad de $30,000.00 en concepto de daños, sin cumplir con el precedente establecido en *Santiago Montañez v. Fresenius Medical,* supra, en tanto no reveló la metodología o los casos que utilizó de referencia al establecer la cuantía en daños.

Por las razones expuestas, hubiese revocado la *Sentencia* apelada, y por ello mi respetuoso disenso.

En San Juan, Puerto Rico, a 20 de mayo de 2024.


Nery Enoc Adames Soto
Juez de Apelaciones